In the Matter of AMY SS., Respondent, v JOHN SS., Appellant. [891 NYS2d 178]—

Kavanagh, J. 

Petitioner and respondent have one son (born in 2003), who resides with petitioner and has been in her custody since his birth. Respondent is incarcerated and has had no contact with

previously noted, has never commenced any legal proceeding to adopt the child.

the child since he was two years old.* In April 2008, petitioner commenced this Family Ct Act article 8 proceeding alleging that respondent had committed the family offense of aggravated harassment in the second degree against her and sought an order of protection barring him from having any contact with her and the child. In support of her petition, petitioner alleged that she had received two threatening letters from respondent and one from an inmate that she did not know who had been incarcerated with respondent for a time in the same correctional facility. After a hearing was held on the petition at which respondent appeared by telephone, Family Court found that respondent had committed the family offense of aggravated harassment in the second degree (*see* Family Ct Act § 812 [1]) and issued an order of protection prohibiting respondent from having any contact with petitioner or the child (*see* Family Ct Act § 841 [d]; § 842). Respondent now appeals.

Respondent, while acknowledging that he sent petitioner the two letters, denies that they were threatening and claims that the allegations contained in the petition have not been proven, as they must in a family offense proceeding, by a fair preponderance of the evidence (*see* Family Ct Act § 832; *Matter of Cruz v Cruz*, 55 AD3d 992, 995 [2008]; *Matter of Mauzy v Mauzy*, 40 AD3d 1147, 1148 [2007]). In that regard, respondent points to the fact that petitioner, by her own admission, did not initially find either letter threatening and claims that no evidence has been presented that established that he knew or had any involvement in the letter sent to petitioner by the other inmate.

As for the two letters that respondent sent to petitioner, the contents of each establishes that petitioner had every reason to be alarmed after receiving them and was justified in believing that they were sent with the intent of alarming and annoying her (*see* Penal Law § 240.30). In one letter, respondent warned petitioner to "stop and think about one thing right now and it is that [he could] put [her fiancé] away" as well as the fact that he had all day, every day to "get information" on her fiancé. He went on to warn petitioner in the letter that she should be careful about what she did to him and he stated that if "you lie to me . . . you will have the worst nightmares you've ever had in your life trust me." Each letter, when fairly read, had an unmistakable tone that carried ominous implications for petitioner's safety and, given the circumstances under which

* The parties had a prior agreement that prohibited respondent from contacting the child, but required petitioner to provide photographs to him periodically. Family Court has since relieved petitioner of that obligation (*see Matter of John SS. v Amy SS.*, 61 AD3d 1305, 1306 n 2 [2009]).

she received them, provided ample support for Family Court's conclusion that respondent had committed a family offense in writing and sending them to her (*see* Family Ct Act § 812 [1]; Penal Law § 240.30).

As for the letter petitioner received from the other inmate, it is impossible to ignore the fact that this inmate had, for a time, been confined in the same correctional facility as respondent and that the men knew each other. It is obvious from the letter's content that this inmate had contact with respondent about petitioner before mailing the letter. In that regard, the inmate stated that he had petitioner's name and address "for quite sometime [*sic*] now" and had not contacted her earlier because he did not want to get her "into trouble [with her] husband." His inquiries about her marital status and employment prospects in the area where she lived justified petitioner's concerns about this letter and lent support to her belief that respondent had a hand in it being sent to her. This letter, when viewed in context with the letters that respondent admits sending petitioner, established by a fair preponderance of the credible evidence that respondent committed the crime of aggravated harassment in the second degree (*see* Penal Law § 240.30; *Matter of Gil v Gil*, 55 AD3d 1024, 1025 [2008]; *Matter of Boulerice v Heaney*, 45 AD3d 1217, 1218-1219 [2007]; *Matter of Draxler v Davis*, 11 AD3d 760, 760-761 [2004]; *compare Matter of Smith v Smith*, 24 AD3d 822, 823 [2005]).

As for the provision in the order of protection barring respondent from having any contact with his son, we note that he has never had any type of relationship with the child and previously consented to the entry of an order of protection that contained a similar provision (*see* Family Ct Act §§ 841, 842). Given the apparent threat that respondent presents to petitioner and her fiancé, and the fact that he has previously been convicted of sexual abuse in the first degree and endangering the welfare of a child, we find that Family Court's decision to include the child in the order of protection was a proper exercise of its discretion (*see* Family Ct Act § 841 [d]; § 842).

Cardona, P.J., Mercure, Spain and Malone Jr., JJ., concur. Ordered that the order is affirmed, without costs.