■ In the Matter of Susan LL., Appellant, v Victor LL., Respondent. [931 NYS2d 189]—

Garry, J.

The parties were married in 2000 and are the parents of a son (born in 2002). Upon their divorce, they stipulated to joint custody of the child, with primary physical custody to petitioner (hereinafter the mother) and visitation to respondent (hereinafter the father) in Florida, where he has resided since 2005. In June 2007, Family Court (Foster, J.H.O.) granted the mother's

petition to modify the prior order by requiring the father's visitation to take place in New York. In April 2010, the mother commenced a family offense proceeding alleging that the father was harassing her through telephone calls and e-mails, and in May 2010 she petitioned for modification of the prior order, seeking suspension of the father's visitation. The father cross-petitioned for visitation in Florida. Family Court (Bartlett III, J.) dismissed the mother's modification petition, dismissed the father's cross petition for visitation in Florida, and established a schedule for his visitation in New York. Further, among other things, the court required the father to participate in counseling and gave him permission to petition for visitation in Florida after May 2011 if he so chose.[1] The mother appeals, with the support of the attorney for the child.

" '[A]n existing visitation order will be modified only if the applicant demonstrates a change in circumstances that reflects a genuine need for the modification so as to ensure the best interests of the child' " (*Matter of Braswell v Braswell*, 80 AD3d 827, 829 [2011], quoting *Matter of Taylor v Fry*, 63 AD3d 1217, 1218 [2009]). A change in circumstances was established by the breakdown of the relationship between the father and child, such that the child developed a strong preference not to visit the father (*see Matter of Burch v Willard*, 57 AD3d 1272, 1273 [2008]; *Matter of Oddy v Oddy*, 296 AD2d 616, 617 [2002]; *Matter of Bowers v Bowers*, 266 AD2d 741, 742 [1999]) and by the father's failure to visit the child for more than a year before the hearing (*compare Matter of Whitcomb v Seward*, 86 AD3d 741, 742-743 [2011]). Thus, Family Court properly conducted an analysis of the child's best interests. Nonetheless, the mother contends that the court erred in this inquiry by refusing to suspend the father's visitation. We disagree.

Visitation with a noncustodial parent is presumed to be in a child's best interests and is denied " 'only under the most compelling circumstances where visitation would be detrimental to the child's welfare' " (*Matter of Brown v White*, 3 AD3d 743, 744 [2004], quoting *Matter of Shaun X.*, 300 AD2d 772, 773 [2002]). A clinical social worker who had treated the child for several years testified that the child was disturbed by ongoing conflict between the mother and the father. She testified that during her treatment of the child, the mother's ability to shield him from these altercations had improved as a result of counseling. However, despite several telephone conversations with the

---

1. Family Court also found that the father had committed a family offense and issued an order of protection precluding him from communicating with the mother except to discuss the child.

social worker[2] and a single in-person counseling session, the
father had not stopped putting the child in the middle of his
conflicts with the mother and had not cooperated with the social
worker's efforts to assist him in improving his relationship with
the child. The social worker testified that the child had over-
heard a number of angry remarks and messages directed by the
father at the mother; as a result, he had developed a perception
that the father was "really mean to his mom" and felt obliged
to defend her during visits with the father. Despite these
problems, the child was willing to engage in visitation with the
father until an incident that transpired during the father's in-
person counseling session in June 2009. On this occasion, the
father spent much of the session urging the child to visit him in
Florida, and finally told the child that if he did not do so, the
father would not see him again. The social worker described the
child as "devastated" by the remark and stated that ever since
the incident, the child had been very angry with the father and
was vehemently opposed to visiting him. The social worker
opined that future visits between the father and child should be
supervised and should take place in New York. However, she
also testified that she was not suggesting that the father have
no visitation with the child at all.

Throughout his testimony, the father continued to insist that
his visitation with the child must take place in Florida.[3] He
maintained that he did not have a problem requiring counsel-
ing, and consistently blamed others—particularly the mother—
for his difficulties with the child. For example, instead of taking
responsibility when the child was disturbed by angry, profane
messages that he left on the mother's answering machine, the
father blamed the mother for failing to prevent the child from
overhearing them. He admitted failing to visit the child during
the 14 months following the June 2009 therapy session, thereby
confirming his warning to the child that he would not see him
again if the child did not conform to his wishes. However, he
also acknowledged that this statement had been a "mistake,"
stated that he was willing to apologize to the child, and testified
that he had maintained telephone contact with the child despite
his failure to visit him. He further admitted that he had erred
by contributing to arguments in which the child should not
have been involved.

---

**2.** The social worker described the telephone conversations as "heated
discussions" during which the father "yell[ed]" and, on one occasion, became
so angry that the social worker terminated the conversation by hanging up on
him.

**3.** He did agree to participate in a visit orchestrated by Family Court to oc-
cur while he was in New York for the hearing.

It is clear from this testimony and other credible evidence in the record that the father's conduct caused or significantly contributed to his estrangement from the child. Nonetheless, we agree with Family Court that the " 'drastic remedy' " of suspending all visitation is not required (*Matter of Laware v Baldwin*, 42 AD3d 696, 697 [2007], quoting *Matter of McCauliffe v Peace*, 176 AD2d 382, 383 [1991]; *accord Matter of Parker v Parker*, 68 AD3d 1277, 1279 [2009]). The preference of this relatively young child to have no visitation with the father is a factor to be taken into account in determining his best interests, but is not dispositive (*see Matter of Flood v Flood*, 63 AD3d 1197, 1198-1199 [2009]; *compare Matter of McGovern v McGovern*, 58 AD3d 911, 915 [2009]).[4] The court's disposition was carefully crafted to assist the father in rebuilding his relationship with the child by incorporating most of the social worker's recommendations toward that end, with the exception of supervised visitation. By directing the father, among other things, to exercise all available visitation, engage in counseling, and communicate regularly with the child, and further directing the mother to improve her efforts to encourage and facilitate visitation, the court offered the father an opportunity to rebuild the child's trust, with the expectation that visitation in Florida could be resumed when these efforts succeeded. We find a sound and substantial basis in the record for the court's conclusion that this disposition is in the best interests of the child (*see Matter of Brown v Erbstoesser*, 85 AD3d 1497, 1500 [2011]; *Matter of Braswell v Braswell*, 80 AD3d at 831; *Matter of Fish v Manning*, 300 AD2d 932, 933 [2002]). Thus, the dismissal of the mother's modification petition will not be disturbed.

Mercure, J.P., Rose, Malone Jr. and Kavanagh, JJ., concur. Ordered that the order is affirmed, without costs.

---

4. The attorney for the child asserts that Family Court's decision improperly revealed the substance of some of the child's communications during the *Lincoln* hearing. Although it is readily apparent that the intention was to benefit the child, it is nonetheless a betrayal to share a child's testimony after promising confidentiality. Absent a direction to the contrary, " 'the child's right to confidentiality should remain paramount' " (*Matter of Verry v Verry*, 63 AD3d 1228, 1229 [2009], *lv denied* 13 NY3d 707 [2009], quoting *Matter of Hrusovsky v Benjamin*, 274 AD2d 674, 676 [2000]; *see Matter of Rivera v LaSalle*, 84 AD3d 1436, 1437 [2011]).