In the Matter of ROBERT AA., Appellant, v COLLEEN BB., Respondent. (And Seven Other Related Proceedings.) [956 NYS2d 642]—

Peters, P.J.

---

We first address the father's challenge to Family Court's suspension of his visitation. There being no dispute that a sufficient change in circumstances had occurred since the prior order, the dispositive issue distills to whether this drastic curtailment of the father's visitation rights was necessary to ensure the child's best interests (*see Matter of Susan LL. v Victor LL.*, 88 AD3d 1116, 1117 [2011]; *Matter of Cole v Comfort*, 63 AD3d 1234, 1235 [2009], *lv denied* 13 NY3d 706 [2009]; *see generally Matter of Bond v MacLeod*, 83 AD3d 1304, 1305 [2011]). Visitation by a noncustodial parent is presumed to be in the child's best interests, but may be denied where the evidence demonstrates that it would be detrimental to the child's welfare (*see Matter of Baker v Blanchard*, 74 AD3d 1427, 1428 [2010]; *Matter of Abare v St. Louis*, 51 AD3d 1069, 1071 [2008]; *Matter of Jones v McMore*, 37 AD3d 1031, 1032 [2007]). "[T]he propriety of visitation is generally left to the sound discretion of Family Court whose findings are accorded deference by this Court and will remain undisturbed unless lacking a sound basis in the record" (*Matter of Conklin v Hernandez*, 41 AD3d 908, 910 [2007] [internal quotation marks and citations omitted]; *see Matter of Walrad v Walrad*, 63 AD3d 1227, 1228 [2009]).

Here, there is ample support in the record for Family Court's denial of visitation to the father. The mother's testimony— which Family Court credited "in all respects"—established that the father has rarely availed himself of the opportunity to visit the child despite her efforts to encourage a relationship between them and notwithstanding an order allowing essentially open access to the child upon agreement. She explained that the father did not see the child for nearly a year after the 2006 order and that, while arrangements for Thursday visitations were

thereafter made at her insistence, these visits were seldom consistent. When the father did visit with the child, the mother observed that the child was swearing and exhibited aggressive behavior. According to the mother, the father again "disappeared from the picture" when the child entered preschool in September 2009, seeing his son only a handful of times thereafter, almost all of which she initiated. Moreover, on at least one occasion he conditioned visitation on having sex with the mother. Family Court was "disturbed" by the testimony regarding the extent of the father's preoccupation with having sexual relations with the mother, and specifically noted his inability to refrain from referencing sexual relations with the mother during his testimony.

Moreover, Family Court credited the mother's testimony regarding the father's alcohol and drug use, and found that his actions placed the child at risk of harm. The mother explained that the father admitted to having resumed drinking and drug use and that, on more than one occasion when dropping off the child, she could smell marihuana in the father's home. During his testimony, the father confirmed that he recently tested positive for cannabis. The mother also detailed incidents where the father drove or attempted to drive the child home from a visit while under the influence of alcohol. She testified further that, in June 2009, the father informed her that he had been convicted of rape. When questioned as to whether he had been convicted of raping a 90-year-old woman, the father invoked the Fifth Amendment.[1] The record is replete with additional conduct by the father that raises serious concerns regarding his ability to care for and supervise the child, including allowing the then-three-year-old child to play violent video games and watch inappropriate television shows, transporting him in the front seat without a seat belt, and an incident—which the father found "funny"—during which he lost the child in Wal-Mart, requiring the store to close all of its doors before the child was ultimately found nearly 45 minutes later. On this record, there is a sound and substantial basis for Family Court's conclusion that continued visitation with the father would not be in the child's best interests (see Matter of Lori DD. v Shawn EE., 100 AD3d

---

1. Family Court was entitled to draw an adverse inference against the father in this civil proceeding as a result of his invocation of the Fifth Amendment (see Matter of Commissioner of Social Servs. v Philip De G., 59 NY2d 137, 141 [1983]; Marine Midland Bank v Russo Produce Co., 50 NY2d 31, 42 [1980]; Searle v Cayuga Med. Ctr. at Ithaca, 28 AD3d 834, 837 [2006]; Matter of Rauss v Johnson, 243 AD2d 849, 850-851 [1997]).

1305, 1307 [2012]; *Matter of Walrad v Walrad*, 63 AD3d at 1228; *Matter of Wise v Burks*, 61 AD3d 1058, 1059 [2009]).[2]

Nor are we persuaded that the evidence was insufficient to establish that the father committed the family offense of aggravated harassment in the second degree. As relevant here, "[a] person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she . . . communicates with a person . . . in a manner likely to cause annoyance or alarm" (Penal Law § 240.30 [1]).

At the hearing, the mother testified that the father sent her more than 10 text messages over the course of a day in July 2010. In the first set of messages, the father repeatedly requested that the mother have the child call him and accused her of keeping the child from him, in response to which she informed him that she was at work and requested that he cease texting her. The mother explained that the messages became increasingly "disturbing," including repeated statements by the father that he was still in love with her and wanted to be together as a family. She testified further that, despite her requests that he stop, the father continued to send her similar text messages throughout the evening and as late as 2:00 a.m., and stated that she was afraid of the father and feared for her safety. We reject the father's assertion that Family Court erroneously permitted the mother to testify to the contents of the text messages in violation of the best evidence rule. The mother sufficiently established that the messages were unavailable as a result of an innocent mishap and despite her due diligence in attempting to recover them (*see Schozer v William Penn Life Ins. Co. of N.Y.*, 84 NY2d 639, 644 [1994]; *Matter of La Rue v Crandall*, 254 AD2d 633, 635 [1998]). According deference to Family Court's credibility determinations (*see Matter of Melissa K. v Brian K.*, 72 AD3d 1129, 1133 [2010]), and mindful that the requisite intent may be inferred from the surrounding circumstances (*see id.; Matter of Christina LL.*, 233 AD2d 705, 709 [1996], *lv denied* 89 NY2d 812 [1997]), we find that the family offense was proven by a preponderance of the evidence (*see Matter of Julie G. v Yu-Jen G.*, 81 AD3d 1079, 1082 [2011]; *Matter of Amy SS. v John SS.*, 68 AD3d 1262, 1263-1264 [2009], *lv denied* 14 NY3d 704 [2010]).

Spain, Kavanagh, McCarthy and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.

---

**2.** Although not determinative, we note that the position advanced by the attorney for the child at the hearing and on appeal is in accordance with Family Court's determination (*see Matter of Ildefonso v Brooker*, 94 AD3d 1344, 1346 n 2 [2012]).