Egan Jr., J.
Appeals (1) from an order of the Family Court of Warren County (Breen, J.), entered September 10, 2012, which, among other things, granted petitioner’s applications, in three proceedings pursuant to Family Ct Act articles 6 and 8, for custody of the parties’ child and for an order of protection, and (2) from the order of protection issued thereupon.
In April 2002, respondent, who then resided in New York, was arrested after he transmitted child pornography via the Internet to an undercover police officer who was posing as a 13-year-old girl. In February 2003, respondent “jumped bail” on that charge and fled to Florida where, by his own admission, he began “living as a fugitive.” While there, respondent became involved in an electronic crime enterprise and primarily supported himself by engaging in credit card fraud. Respondent and petitioner met in Florida in April 2004 and moved in together shortly thereafter.
In October 2004, respondent was arrested and extradited to New Jersey to face a federal indictment related to the credit card fraud. In 2005, the parties’ child, who is the subject of these proceedings, was born. Following resolution of the federal charges, respondent was extradited to New York to answer to the child pornography and bail jumping offenses and, in 2006, pleaded guilty to one count of promoting a sexual performance by a child, one count of attempted dissemination of indecent *1091 material to a minor in the first degree and one count of bail jumping in the second degree and was sentenced to an aggregate prison term of 2 to 6 years.
During the course of respondent’s incarceration, petitioner initially attempted to facilitate a relationship between respondent and the child. As time went on, however, petitioner became increasingly alarmed by what she regarded as the threatening nature of certain statements made by respondent in various letters to and telephone conversations with her. Following respondent’s release from prison in 2011, petitioner commenced the first two of these four proceedings alleging a family offense and seeking an order of protection. Shortly thereafter, respondent petitioned for custody and visitation, and petitioner cross-petitioned for sole legal and physical custody of the child. A combined hearing ensued, at the conclusion of which Family Court granted petitioner sole legal and physical custody of the child with therapeutic visitation to respondent. Family Court also found that respondent committed the family offense of harassment in the first degree and awarded petitioner a two-year order of protection. Respondent now appeals.
We affirm. Contrary to respondent’s assertion, Family Court’s detailed factual findings — both with respect to the underlying family offense and the award of therapeutic visitation — are more than sufficient to permit intelligent appellate review. Turning to the merits, petitioner bore the burden of establishing by a preponderance of the evidence (see Matter of Christina MM. v George MM., 103 AD3d 935, 936 [2013]; Matter of Sharyn PP. v Richard QQ., 83 AD3d 1140, 1142 [2011]) that respondent committed the family offense of harassment in the first degree— specifically, that he “intentionally and repeatedly” harassed her “by engaging in a course of conduct or by repeatedly committing acts which place [d] [her] in reasonable fear of physical injury” (Penal Law § 240.25). The requisite intent may be inferred from the surrounding circumstances (see Matter of Robert AA. v Colleen BB., 101 AD3d 1396, 1399 [2012], lv denied 20 NY3d 860 [2013]; Matter of Patricia H. v Richard H., 78 AD3d 1435, 1436 [2010]). Ultimately, “whether a family offense [has been] committed is a factual issue to be resolved by . . . Family Court, and its determinations regarding the credibility of witnesses are entitled to great weight on appeal” (Matter of Nettles v Fearrington, 95 AD3d 1131, 1131 [2012] [internal quotation marks and citation omitted]).
Petitioner testified that, while incarcerated, respondent repeatedly threatened both her well-being and to take the child away from her. For example, when petitioner advised respon *1092 dent that she had met another man (now her husband), respondent replied, “[You] must have a f . . . ing death wish. . . . Hit’s until death do us part . . . , you don’t just get to leave.” Similarly, when petitioner approached respondent about changing the child’s last name,[1] respondent stated, “[I]f you try to take that f . . . ing kid from me I will make sure he . . . never knows your name, ... I [will] make him disappear like that (fingers snapping); all it takes is one phone call.” Finally, when petitioner suggested that they allow Family Court to resolve their differences, respondent replied, “[E]ven if you do win in court I’m gonna make sure you lose.” These specific statements, in our view, “carried ominous implications” for petitioner and the child’s safety and, given the context in which they were made,[2] “provided ample support for Family Court’s conclusion that respondent had committed [the underlying] family offense” (Matter of Amy SS. v John SS., 68 AD3d 1262, 1263-1264 [2009], lv denied 14 NY3d 704 [2010]). Although respondent steadfastly denied threatening to harm the child or petitioner, this conflict in the testimony presented a credibility issue for Family Court to resolve, and we reject respondent’s assertion that the foregoing statements constituted protected speech (see Matter of Cukerstein v Wright, 68 AD3d 1367, 1369 [2009]).
As for Family Court’s decision to award respondent therapeutic visitation with the child, “the propriety of visitation is generally left to the sound discretion of Family Court whose findings are accorded deference by this Court and will remain undisturbed unless lacking a sound basis in the record” (Matter of Conklin v Hernandez, 41 AD3d 908, 910 [2007] [internal quotation marks and citations omitted]). Here, in light of *1093 respondent’s limited contact with the child while incarcerated and his resulting lack of parental experience, as well as his failure to successfully complete a sex offender treatment program, we discern no basis upon which to set aside Family Court’s award of therapeutic visitation — particularly given the nightmares and behavioral difficulties that the child experienced following visits with respondent (see Matter of Smith v Roberts, 67 AD3d 688, 689 [2009], lv denied 13 NY3d 717 [2010]; Matter of Perez v Hughes, 59 AD3d 725, 726 [2009]). Respondent’s remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Lahtinen, J.E, Stein and Spain, JJ., concur. Ordered that the orders are affirmed, without costs.

. The apparent impetus for this change was a desire to avoid having the child bear the same last name as a registered sex offender. Respondent ultimately consented to the name change.

. During the period that these various threats were made, petitioner also received several disturbing letters from respondent, wherein he, among other things, indicated that he could have killed the Secret Service agent who apprehended him in Florida “and not felt a single qualm about it,” reflected upon how much he “would enjoy leveling a federal courthouse with a half ton of SemTex” and revealed that he had “such contempt” for those involved in his federal prosecution that “it freak[ed] [him] the hell out.” On this latter point, respondent acknowledged, “I don’t think it’s normal to feel that way about another human being. But that’s the way I feel; that the world would be a better place without them in it.” Petitioner testified that because respondent was a fugitive when she met him — and having learned in January 2011 of respondent’s previously expressed desire to kill her- — she believed that respondent had the knowledge and the wherewithal to harm her and her family (cf. Matter of Cukerstein v Wright, 68 AD3d 1367,1369 [2009] [“(Respondent’s) prior experience with (petitioner’s) assaultive behavior made the threats credible”]).