■ In the Matter of Evelyn EE., Appellant, v Lorraine B., Respondent. [58 NYS3d 740]—

Mulvey, J. Appeal from an order of the Family Court of Schenectady County (Powers, J.), entered July 7, 2016, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 8, for an order of protection.

Petitioner is the daughter of George EE. (hereinafter the

father) and respondent, who were never married. In October 2015, while the father was gravely ill in the hospital, petitioner and respondent were involved in a disturbance in the hospital regarding respondent's visitation with the father. This incident took place in front of petitioner's 15-year-old son, of whom respondent had custody. Following the incident, petitioner filed a Family Ct Act article 8 petition alleging that respondent had committed the family offenses of disorderly conduct, harassment in the first or second degree and aggravated harassment in the second degree. A fact-finding hearing was held and, at the close of petitioner's proof, respondent moved to dismiss the petition arguing that, even if petitioner's testimony were credited, the action complained of did not constitute any of the family offenses alleged. Family Court reserved on that motion. At the close of proof, Family Court concluded that, even crediting petitioner's account, as a matter of law, the conduct complained of in the petition did not constitute harassment in the first or second degree or aggravated harassment in the second degree. With respect to the charge of disorderly conduct, the court, declining to credit petitioner's account of the incident, found that petitioner had not met her burden of proving that charge by a preponderance of the evidence and dismissed the petition. Petitioner appeals.

We affirm. In the context of a family offense petition, "petitioner maintains the burden of demonstrating by a fair preponderance of the evidence that respondent committed the alleged family offenses" (*Matter of Marianna K. v David K.*, 145 AD3d 1361, 1362 [2016]; *see* Family Ct Act §§ 821, 832; *Matter of Elizabeth X. v Irving Y.*, 132 AD3d 1100, 1101 [2015]). The testimony, viewed in a light most favorable to petitioner, shows that respondent and petitioner's son arrived at the hospital to visit the father who, as it turned out, had only hours to live. When petitioner saw respondent, she confronted her and said that, while her son could stay to visit the father, respondent was "not welcome . . . in the least bit." A verbal exchange between petitioner and respondent ensued, and the nursing staff called security because of the commotion. Petitioner testified that, as respondent was being escorted out of the hospital, respondent yelled that she was going to "have [petitioner] f. . .** up." She also claimed that respondent said that petitioner would never be allowed to see her son again, and further claimed that respondent made personally disparaging remarks about her.

On cross-examination, petitioner testified that she believed that respondent killed the father because he died while respon-

dent was in his room. She also implied that the FBI and Attorney General were investigating the matter and that it had made the news. Petitioner claimed that respondent said, "you're a f. . .. . . bitch, you're wrong for doing this" and that she considered that to be a form of harassment. She testified that respondent's comments made her feel alarmed, intimidated and frightened, and she stated that, "it was beyond ridiculous." Petitioner conceded that there was no physical contact between her and respondent during the incident. Although petitioner claimed that her friend was present during the incident, the friend was not called to testify nor were any of the nursing staff or security personnel. Family Court reserved on respondent's motion to dismiss at this point.

The hearing then turned to respondent's account of the incident, which provided a very different narrative. She testified that she and the father had a 50-year friendship and were, at different times, romantically involved. Although she claimed that she had been visiting the father frequently during his latest illness, this was the first time that she and petitioner were at the hospital at the same time. Respondent testified that petitioner spoke first by calling her "dirty names" like "[b]itch" and accused her of killing the father and "kept ranting and raving" and that respondent asked her to stop. Respondent also testified to an ugly exchange between petitioner and her son. On cross-examination, respondent admitted that, in response to petitioner yelling at her when she arrived in the hospital room, respondent had raised her voice and used "tough language," telling her that "[t]his [was] not the time nor the place" for her behavior. Respondent denied petitioner's allegations that she had cursed and used foul language toward petitioner.

Initially, given petitioner's failure in her brief to address the dismissal of the charge of aggravated harassment in the second degree and harassment in the first degree, she is deemed to have abandoned any claim that Family Court erred in dismissing those charges (*see Matter of Christina Z. v Bishme AA.*, 132 AD3d 1102, 1103 n [2015]). Turning to the merits, as is relevant here, a person commits harassment in the second degree when, "with intent to harass, annoy or alarm another person . . . [h]e or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose" (Penal Law § 240.26 [3]; *see Matter of Lynn TT. v Joseph O.*, 129 AD3d 1129, 1130

[2015]).* Even viewing the evidence adduced at the hearing in the light most favorable to petitioner, we agree with Family Court's conclusion that petitioner did not make a prima facie showing that respondent committed the family offense of harassment in the second degree (see Matter of Christina MM. v George MM., 103 AD3d 935, 936-937 [2013]; compare Jennifer JJ. v Scott KK., 117 AD3d 1158, 1160 [2014]). Notably, given these facts, "an isolated incident cannot support a finding of harassment" (Matter of Amber JJ. v Michael KK., 82 AD3d 1558, 1560 [2011]).

With respect to the charge of disorderly conduct, Penal Law § 240.20 (3) provides that a person is guilty of disorderly conduct when, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [i]n a public place, he [or she] uses abusive or obscene language." In the context of a family offense proceeding, the requirement of a public place is eliminated (see Family Ct Act § 812 [1]). Significantly, Family Court declined to credit petitioner's testimony regarding either the words or the conduct attributed to respondent, noting that her testimony was "motivated by overriding anger" and that "[s]he appears to have embellished and/or fabricated what may have been said." The court further found that there was simply insufficient proof that the alleged conduct ever took place. "[W]hether a family offense has been committed is a factual issue to be resolved by Family Court, and its determinations regarding the credibility of witnesses are entitled to great weight on appeal" (Matter of Shana SS. v Jeremy TT., 111 AD3d 1090, 1091 [2013] [internal quotation marks, ellipsis, brackets and citation omitted], lv denied 22 NY3d 862 [2014]; see Matter of Dawn DD. v James EE., 140 AD3d 1225, 1226 [2016], lv denied 28 NY3d 903 [2016]). Giving due deference to the court's credibility determinations, we find no error in the dismissal of the petition.

McCarthy, J.P., Egan Jr., Lynch and Rose, JJ., concur. Ordered that the order is affirmed, without costs.

---

* The petition did not specify which subsection of Penal Law § 240.26 respondent allegedly violated. Given that there was admittedly no physical contact as required under subdivision (1) of this statute, and there was no testimony that would support a finding under subsection (2), which requires following a person in or about a public place, our discussion necessarily addresses only conduct under subdivision (3) of the statute.