Lynch, J.
 

 Appeal from an order of the Family Court of Tioga County (Morris, J.), entered June 6, 2016, which, among other things, granted petitioner’s application, in proceeding No. 6 pursuant to Family Ct Act article 6, to modify a prior order of visitation.
 

 Kevin F. (hereinafter the father) and Betty E. (hereinafter the mother) are the parents of a daughter (born in 2004). In June 2013, the parents consented to an order of custody and visitation that, among other things, granted the mother “sole custody and placement” of the child, with the father having supervised parenting time on alternate Sundays from 9:00 a.m. to 5:00 p.m. to be supervised by the child’s paternal uncle or the paternal uncle’s significant other. The 2013 order also required the parents to complete a parenting program and the father to complete an anger management program.
 

 Beginning in November 2014, the parents filed a series of petitions pursuant to Family Ct Act articles 6 and 8. Insofar as relevant here, in April 2015, the mother commenced the fourth of these proceedings — a Family Ct Act article 8 proceeding— alleging that the father committed the family offense of harassment in the first or second degree and seeking a stay-away order of protection on behalf of herself and the child. Thereafter, in July 2015, the father commenced the sixth of these proceedings — a Family Ct Act article 6 proceeding — seeking to modify the prior order of custody and visitation. Following a fact-finding hearing and a Lincoln hearing,
 
 [1]
 
 Family Court, as relevant here, dismissed the mother’s family offense petition on the basis that she failed to present sufficient evidence of the alleged family offense to satisfy her burden of proof, granted the father’s modification petition to the extent of ordering that the father’s alternate Sunday parenting time with the child from 9:00 a.m. to 5:00 p.m. be unsupervised
 
 [2]
 
 and otherwise dismissed the father’s modification petition. The mother appeals.
 

 As the party seeking modification of the consent order, the father bore the threshold burden to “demonstrate that a change in circumstances has occurred since the entry [of the prior order] ... to warrant the court undertaking a best interests analysis in the first instance” (Matter of David J. v Leeann K., 140 AD3d 1209, 1210 [2016] [internal quotation marks and citation omitted]; see Matter of Alexis EE. [Nadia EE. — Kenneth EE.], 153 AD3d 1056, 1057 [2017]). In other words, a court may consider a child’s best interests only if this threshold burden is met (see Matter of Trimble v Trimble, 125 AD3d 1153, 1154 [2015]; Matter of Barbara L. v Robert M., 116 AD3d 1101, 1102 [2014]). Where a party demonstrates the requisite change in circumstances, factors relevant to determining whether a modification will serve the child’s best interests include “each parent’s relative fitness and past parenting performance, the duration of the prior custody arrangement, the child’s wishes, the respective home environments, including the existence of domestic violence, and the likelihood of each parent to foster a relationship between the child and the other parent” (Matter of Dorsey v De’Loache, 150 AD3d 1420, 1422 [2017] [internal quotation marks and citation omitted]).
 

 The father alleged in his modification petition that since the entry of the prior order, the mother’s estranged husband had been arrested for sexually abusing the child and was the subject of an order of protection prohibiting the estranged husband from having any contact with the child. Thereafter, according to the father, in July 2015, the child was observed in a car with the mother and the estranged husband. At the fact-finding hearing, the father presented testimony by a neighbor who confirmed that he had known the mother for a “[v]ery long time,” the estranged husband “for years” and the child since the child’s birth. According to the neighbor, he was standing in his yard at about 2:00 p.m. or 3:00 p.m. when he saw the mother drive by in a blue or green van with the mother’s estranged husband in the front passenger seat and the child in the rear passenger seat. The child’s maternal grandmother testified that the child was at her house all day on the day that the neighbor claimed to see the child in the mother’s van with the estranged husband. The mother testified that on the day in question, she drove by the neighbor’s house in a gray van at about 7:30 p.m. and the only “passengers” were her two dogs. She explained that at 2:00 p.m., she was mowing her lawn and that she mowed her lawn intermittently for most of the day beginning at 9:00 a.m.
 

 Family Court credited the neighbor’s testimony over the mother’s but, paradoxically, found that “the evidence was not sufficient for the [c]ourt to definitively conclude” that the mother drove by the neighbor’s house with the estranged husband and child. Consequently, the court determined that the father did not demonstrate “a change [in] circumstances ... to support a change of physical custody” from the mother to the father, but that “he [did] demonstrate [ ] a change [in] circumstances ... to modify his visitation” with the child. After concluding that it had been a year since the father had been directed to arrange for parenting time, the court modified the father’s parenting time from supervised to unsupervised on alternate Sundays from 9:00 a.m. to 5:00 p.m.
 

 Initially, although we find that Family Court failed to adequately articulate its basis to modify the prior order, we have the authority to review the record and make an independent determination (see Scott Q. v Joy R., 151 AD3d 1206, 1207 [2017], lv denied 29 NY3d 919 [2017]; Matter of Dorsey v De’Loache, 150 AD3d at 1421; Matter of Miller v Miller, 94 AD3d 1369, 1370 [2012], lv denied 19 NY3d 807 [2012]). The uncontradicted proof in the record reflects that since the prior order, the estranged husband sexually abused the child, the mother was the subject of an indicated report of inadequate guardianship and the estranged husband and the mother were subject to orders of protection prohibiting contact between the child and the estranged husband. While the mother was separated from the estranged husband, she admitted that she continued to see him periodically, and the estranged husband’s mother was the child’s regular caregiver. In our view, these facts established a change in circumstances warranting an inquiry into the best interests of the child (see Matter of Bradley D. v Andrea D., 144 AD3d 1417, 1418-1419 [2016]).
 

 Turning to the best interests of the child analysis, Family Court failed to explicitly set forth a review of the necessary factors on the record. Our independent review reveals that the existing custodial arrangement was not effective, in part, because the father only exercised his supervised parenting time on 5 out of 21 possible occasions. While the court discredited the mother’s explanation with regard to why the father did not have parenting time, the father did not exercise the court-ordered parenting time that was afforded to him during the pendency of these proceedings. Significantly, the father admitted that he did not attend the parenting and anger management courses as required by the prior order. The fundamental flaw here is that the court focused on the mother’s conduct and credibility without adequately taking into account the father’s own conduct.
 

 While we are mindful that “[t]he best interests of the child [ ] generally lie with a healthy, meaningful relationship with both parents,” supervised visitation may be appropriate if “unsupervised visitation would be detrimental to the child[’s] safety because the parent is either unable or unwilling to discharge his or her parental responsibility properly” (Matter of Williams v Patinka, 144 AD3d 1432, 1433 [2016] [internal quotation marks and citations omitted]; see Matter of Christine TT. v Dino UU., 143 AD3d 1065, 1067 [2016]). Here, neither parent appears to be willing to foster a relationship between the child and the other parent. Having failed to avail himself of court-ordered supervised parenting time during the pendency of the proceeding, the father did not demonstrate a sincere desire to establish a relationship with the child. Notably, the father could have sought to modify custody upon his completion of anger management and parenting programs at any time during the two years following the entry of the prior order, but instead chose to simply ignore the order, which, as the court acknowledged, was based on allegations of corporal punishment. Given this history and upon review of the Lincoln hearing testimony, we find that Family Court’s determination to award the father unsupervised parenting time is not supported by a sound and substantial basis in the record. Moreover, we cannot agree with the court’s determination to excuse the father’s obligation to complete an anger management program because the order was issued on consent, particularly when the father did not seek such relief.
 

 We do, however, agree with Family Court that the mother failed to satisfy her burden of proof on her April 2015 family offense petition. As the party seeking an order of protection, the mother bore the burden of establishing by a preponderance of the evidence that the father committed the alleged family offense of harassment in the first or second degree (see Matter of Dawn DD. v James EE., 140 AD3d 1225, 1226 [2016], lv denied 28 NY3d 903 [2016]; Matter of Elizabeth X. v Irving Y., 132 AD3d 1100, 1101 [2015]). Harassment in the first degree requires that an individual “intentionally and repeatedly harass [ ] another person ... by engaging in a course of conduct or by repeatedly committing acts which placet ] such person in reasonable fear of physical injury” (Penal Law § 240.25; see Matter of David ZZ. v Michael ZZ., 151 AD3d 1339, 1340 [2017]), while harassment in the second degree requires that, “with intent to harass, annoy or alarm another person . . . [an individual] strikes, shoves, kicks or otherwise subjects . . . [an]other person to physical contact, or attempts or threatens to do the same” (Penal Law § 240.26 [1]; see Matter of David ZZ. v Michael ZZ., 151 AD3d at 1340).
 

 The mother testified that she and the child were harassed by the father when he repeatedly drove by her home in the afternoon, telephoned her and left messages demanding that she pay rent that he claimed she owed him. She testified that his conduct stopped for a few hours but that, in the early evening, he parked in her driveway, “blowing the horn, flickering the headlights” while repeatedly texting and looking for money. According to the mother, the father continued with this conduct until nearly midnight, prompting the child to hide under a bed. The mother also testified to an incident approximately one month later when the father drove his mother’s car slowly along the mother’s property line. The father testified that none of the alleged events took place, and, although the mother did seek police involvement, no criminal charges were ever filed against the father. According the requisite deference to Family Court’s credibility determinations (see Matter of Evelyn EE. v Lorraine B., 152 AD3d 915, 918 [2017]), there is ample support in the record for its determination that the mother failed to prove, by a preponderance of the evidence, that the father committed the family offense of harassment in the first or second degree.
 

 Egan Jr., J.P., Rose and Mulvey, JJ., concur.
 

 Ordered that the order is modified, on the law and the facts, without costs, by reversing so much thereof as granted petitioner’s application in proceeding No. 6; said petition dismissed; and, as so modified, affirmed.
 

 [1]
 

 . Despite a transcription discrepancy in the Lincoln hearing transcript as to who participated in the hearing, we have confirmed that the hearing properly involved Family Court, the child and the attorney for the child.
 

 [2]
 

 . Family Court ordered that the father’s first three visits with the child be supervised by the child’s paternal uncle or his significant other and that such visits be for a shorter duration, from 9:00 a.m. to 12:00 p.m.