Matter of Citizens Concerned for Children, Inc. v Rahsaan CC. (2018 NY Slip Op 08726)





Matter of Citizens Concerned for Children, Inc. v Rahsaan CC.


2018 NY Slip Op 08726


Decided on December 20, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 20, 2018

526074

[*1]In the Matter of CITIZENS CONCERNED FOR CHILDREN, INC., on Behalf of MEGAN BB. and Another, Infants, Respondent, 
v
RAHSAAN CC., Appellant.

Calendar Date: November 16, 2018

Before: Garry, P.J., McCarthy, Egan Jr., Devine and Clark, JJ.


Michelle I. Rosien, Philmont, for appellant.
Citizens Concerned for Children, Inc., Ithaca (Kathleen A. Sullivan of counsel), for respondent.



MEMORANDUM AND ORDER
Egan Jr., J.
Appeals from two orders of the Family Court of Tompkins County (Rowley, J.), entered October 30, 2017, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 8, finding respondent to have committed a family offense, and issued an order of protection.
Stacy DD. (hereinafter the mother) is the mother of two children (born in 2001 and 2002). Respondent is the mother's boyfriend and has resided with the mother and the children for approximately two years. In May 2017, the children left the mother's residence and moved in with their paternal aunt [FN1]. Petitioner — a nonprofit agency representing the children in Family Court in Tompkins County — thereafter commenced this Family Ct Act article 8 proceeding on behalf of the children seeking an order of protection, alleging that respondent committed numerous family offenses against the children, including, among other offenses, harassment and [*2]menacing. Following a fact-finding hearing, Family Court sustained the petition, finding that respondent had committed the family offenses of harassment in the first degree and menacing in the second degree [FN2]. A dispositional hearing subsequently ensued, whereupon Family Court ordered respondent to be placed under the supervision of the Probation Department for a period of one year and required him to, among other things, participate in a batterer's education program and undergo a substance abuse evaluation and treatment. Family Court also issued a two-year, no-contact order of protection. Respondent now appeals.
We affirm. As the party seeking an order of protection in a family offense proceeding, it was petitioner's burden to establish, by a fair preponderance of the evidence, that respondent committed the alleged family offenses (see Family Ct Act §§ 821 [1] [a]; 832; Matter of Kevin F. v Betty E., 154 AD3d 1118, 1122 [2017]; Matter of David ZZ. v Michael ZZ., 151 AD3d 1339, 1340 [2017]; Matter of Elizabeth X. v Irving Y., 132 AD3d 1100, 1100 [2015]). As relevant here, to establish the offense of harassment in the first degree, petitioner was required to prove that respondent "intentionally and repeatedly harasse[d] [the children] by following [the children] in or about a public place or places or by engaging in a course of conduct or by repeatedly committing acts which place[d] [the children] in reasonable fear of physical injury" (Penal Law § 240.25). To establish the offense of menacing in the second degree, petitioner was required to prove that respondent "intentionally place[d] or attempt[ed] to place [the children] in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm" (Penal Law § 120.14 [1]). "[W]hether a family offense has been committed is a factual issue to be resolved by Family Court, and its determinations regarding the credibility of witnesses are entitled to great weight on appeal" (Matter of Debra SS. v Brian TT., 163 AD3d 1199, 1203 [2018] [internal quotation marks and citations omitted]; see Matter of Angelique QQ. v Thomas RR., 151 AD3d 1322, 1323 [2017]).
Here, the evidence at the fact-finding hearing established that respondent would frequently yell obscenities and threaten the mother and the children. Respondent would threaten "to violate" the daughter and would threaten to fight the son, getting in his face and taunting him to "square up." Respondent would also comment about the clothing that the daughter wore, called her derogatory obscenities based on how she dressed and once threatened to "trick[] [her] out like [her] mother," a clear reference to prostitution. Respondent also frequently text-messaged the daughter from the mother's phone, pretending to be the mother, and would make derogatory comments. The children also testified that respondent routinely dealt drugs from their home, that there were people going in and out of the house and, as a result, they were often confined to staying in the rear portion of the residence and were not allowed to enter the kitchen where respondent kept his drugs. Respondent also verbally abused the mother, a frequent drug user, calling her a "junkie b****," belittling her ability as a mother and threatening to take away her drugs. The daughter testified that, although she had never witnessed respondent strike the mother, she had overheard him physically strike her. The children both testified that respondent's conduct made them feel unsafe as they believed that respondent would follow through on his threats and that, as a result, they felt like prisoners in their own home.
During one particular altercation between respondent and the son, respondent knocked an iPad out of the son's hand — cracking the screen and case — and, in the process, scratched the son's arm. The son testified that, when he then attempted to walk past respondent so that he and his sister could exit the residence, respondent blocked the exit and lifted up his shirt and put his hand on a handgun located in his waistband. The son testified that he perceived this "as a threat [*3]that [respondent] was going to pull his gun out and shoot [him]." The daughter was present during this altercation and corroborated the son's account. Although both respondent and the mother denied that respondent owned a handgun, sold drugs from the home, yelled obscenities or ever threatened the mother or the children and that respondent's communications were all for legitimate purposes in his quasi-parental role, Family Court rejected these claims in this regard and was well within its discretion to credit the testimony of the children over that of respondent and the mother (see Matter of Michele OO. v Kevin PP., 161 AD3d 1248, 1249 [2018]; Matter of Lynn TT. v Joseph O., 129 AD3d 1129, 1130-1131 [2015]). According deference to Family Court's credibility determinations and having independently reviewed the record, and given the context in which the threats were made and in consideration of the domestic violence and illicit drug use and sales occurring within the home and the overall relationship between respondent and the children, we find that petitioner established by preponderance of the evidence that respondent committed the family offenses of harassment in the first degree and menacing in the second degree (see Matter of Erica II. v Jorge JJ., 165 AD3d 1390, 1391-1392 [2018]; Matter of Shana SS. v Jeremy TT., 111 AD3d 1090, 1091-1092 [2013], lv denied 22 NY3d 862 [2014]; compare Matter of Kevin F. v Betty E., 154 AD3d at 1121).
Garry, P.J., McCarthy, Devine and Clark, JJ., concur.
ORDERED that the orders are affirmed, without costs.



Footnotes

Footnote 1: After the children left the mother's home, the children's paternal aunt applied for and was granted temporary custody of the children pursuant to Family Ct Act article 6. Subsequently, Tompkins County Child Protective Services received a report, alleging, among other things, that the mother and respondent engaged in illicit drug use and drug sales at the home that they shared with the children. Following an investigation, the Tompkins County Department of Social Services filed a Family Ct Act article 10 neglect petition against the mother on May 17, 2017 based on the aforementioned allegations. The mother subsequently failed to appear in response to the petition and, in August 2017, Family Court determined that the mother was in default and entered a fact-finding and dispositional order deeming the allegations in the May 2017 petition to have been admitted and found the children to be neglected.

Footnote 2: Although Family Court indicated at the dispositional hearing that sufficient evidence was introduced to find that respondent's conduct "met the elements of a number of Penal Law violations, including harassment in the first degree, aggravated harassment in the second degree, menacing," among others, the court ultimately clarified in its written fact-finding order that it specifically found respondent to have committed the offenses of harassment in the first degree and menacing in the second degree.