Zachery VV. v Angela UU. (2021 NY Slip Op 01299)





Zachery VV. v Angela UU.


2021 NY Slip Op 01299


Decided on March 4, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 4, 2021

530723

[*1]In the Matter of Zachery VV., Respondent,
v
Angela UU., Appellant. (And Another Related Proceeding.)

Calendar Date: January 13, 2021

Before: Egan Jr., J.P., Clark, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.


Cliff Gordon, Monticello, for appellant.
Ivy M. Schildkraut, Rock Hill, for respondent.
Marcia Heller, Rock Hill, attorney for the child.



Colangelo, J.
Appeal from an order of the Family Court of Sullivan County (Meddaugh, J.), entered November 15, 2019, which, among other things, partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of the subject child (born in 2012). Pursuant to a July 2016 order entered on consent, the parties had joint legal custody of the child, the mother had primary physical custody and final decision-making authority and the father had parenting time on alternate weekends, certain holidays and two weeks in the summer. On April 26, 2019, after two weeks of not seeing the child, the father picked up the child for visitation and observed bruising across the child's legs. The father filed an emergency modification petition for sole custody in Dutchess County and was granted a temporary order of sole legal and physical custody by Family Court (Mackenzie, J.). The court, in a separate order, transferred the proceeding to Sullivan County, where the mother's new home is located. In May 2019, the mother commenced the second custody modification proceeding in Sullivan County seeking sole legal and physical custody of the child. Following a fact-finding hearing and a Lincoln hearing, Family Court (Meddaugh, J.) concluded that the child's best interests would be served by continuing the award of joint legal custody, but granted primary physical custody to the father and parenting time to the mother. The mother appeals, arguing that the father failed to demonstrate the requisite change in circumstances and that the child's best interests would be served by her retaining primary physical custody.[FN1]
"A parent seeking to modify an existing custody order must first show that a change in circumstances has occurred since the entry of the existing custody order that then warrants an inquiry into what custodial arrangement is in the best interests of the child" (Matter of Anthony YY. v Emily ZZ., 189 AD3d 1924, 1924 [2020] [citations omitted]; see Matter of Amanda I. v Michael I., 185 AD3d 1252, 1254 [2020]; Matter of Kanya J. v Christopher K., 175 AD3d 760, 761 [2019], lvs denied 34 NY3d 905, 906 [2019]). We note that Family Court did not make an express finding with respect to whether a change in circumstances occurred since entry of the prior order. However, remittal is not necessary given our authority to review the record and make an independent determination in that regard (see e.g. Matter of Kevin F. v Betty E., 154 AD3d 1118, 1121 [2017]).
The evidence at the fact-finding hearing established that Child Protective Services (hereinafter CPS), in conjunction with the Sullivan County Department of Family Services and the State Police, opened an investigation into allegations that the child was the victim of sexual and physical abuse and that the child was not enrolled in school. The child was examined on [*2]April 28, 2019 following the first hotline report of the same day, and was found to have a variety of bruises from her inner groin to her ankles and on her inner arms that appeared to be in various stages of healing. Although the child's injuries could not be attributed to acts committed by any of the caregivers in the mother's or father's homes,[FN2] the evidence credited by Family Court revealed that the child fell while carrying her two-year-old half sister down a flight of wooden stairs in the mother's new house and that none of the adults residing in the home, including the mother, her husband or her husband's mother, was aware of what was transpiring. In addition, the mother admitted to the CPS caseworker that, although she observed bruises on the child when the child left for visitation on April 26, 2019, she did not seek medical attention for the child. The mother explained that the child is very active, constantly running, jumping and playing with her husband's two younger children, ages two and three at the time of the fact-finding hearing, and had fallen down the stairs. The mother further testified that all three children get bruises. The mother's husband admitted that the three children wrestle together and "beat the crap" out of each other and that, at times, his son would hold his daughter so tightly in a choke hold that he would have to pry the son's hands off of his daughter to separate them. The husband admitted that the children throw toys around that hit each other and that he has been hit in the face. It was further established that, in the mother's absence, the husband's method of disciplining the child is to send the child to her room, where she ends up "destroying" the room until the mother returns home.
Although the evidence failed to inculpate any one of the child's caregivers, it was demonstrated that the child sustained the bruises during the two-week period prior to April 26, 2019, during which the child was in the mother's sole care and custody. It was also established that the child did not attend school in April 2019 following the mother's relocation to a different school district. Family Court found no merit to the mother's excuses for failing to enroll the child in school, and also found that, to the child's detriment, the mother could neither avail herself of the extra help that was offered to her and that she needed, nor did she see her counselor. Given CPS's findings that the child sustained unexplained bruising and no medical attention was sought, and that the child had been absent from school for several weeks due to the mother's failure to enroll the child in the new school district, we find that a change in circumstances had occurred warranting an inquiry into the best interests of the child (see Matter of Anthony YY. v Emily ZZ., 189 AD3d at 1924-1925; Matter of Lawrence v Kowatch, 119 AD3d 1004, 1005 [2014]; Matter of Holleran v Faucett, 143 AD3d 1205, 1206 [2016]).
In making a best interests determination[*3], Family Court "must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child[]'s life, each parent's willingness to promote a positive relationship between the child[] and the other parent and each parent's past performance, relative fitness and ability to provide for the child[]'s intellectual and emotional development and overall well-being" (Matter of Jacob WW. v Joy XX., 180 AD3d 1154, 1155 [2020] [internal quotation marks and citation omitted]; see Matter of Dennis F. v Laura G., 177 AD3d 1110, 1112 [2019]). Given that Family Court is in a superior position to evaluate the testimony and credibility of witnesses, we accord great deference to its factual findings and credibility assessments and will not disturb its determination if supported by a sound and substantial basis in the record (see Matter of Matthew DD. v Amanda EE., 187 AD3d 1382, 1383 [2020]; Matter of Damian R. v Lydia S., 182 AD3d 650, 651 [2020]; Matter of Jennifer D. v Jeremy E., 172 AD3d 1556, 1557 [2019]).
The testimony of the father's live-in girlfriend established that the child was enrolled in school within the first week of the father's award of temporary emergency custody, and she consistently helped the child with homework. The girlfriend testified that she bought grade-appropriate reading, writing and math workbooks for the child, and she and the father reviewed the child's work with her. Although the evidence established that the father discontinued the child's attention deficit hyperactivity disorder medication without consulting a physician, Family Court concluded that "that conduct pales in comparison to the dangers that exist in the [mother]'s household." In determining that the child's best interests would be served by the parties continuing to have joint legal custody, with the father having physical custody and final decision-making authority subject to the mother's parenting time, the court placed great emphasis on the father's immediate enrollment of the child in school and the risk of physical and emotional injury to the child if the child were to remain in the mother's household. According deference to the credibility and factual determinations of Family Court, and after reviewing the record before us, we are satisfied that the determination to award primary physical custody of the child to the father is supported by a sound and substantial basis in the record (see Matter of Anthony YY. v Emily ZZ., 189 AD3d at 1925; Matter of Michael Q. v Peggy Q., 179 AD3d 1329, 1331-1332 [2020]).
Egan Jr., J.P., Clark, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Like the father, the attorney for the child asserts that Family Court's determination is supported by a sound and substantial basis in the record.

Footnote 2: Although all caregivers were indicated for inadequate guardianship, the allegations of physical or sexual abuse were not substantiated.