■ HEATHER B., Appellant, v DANIEL B., Respondent. [4 NYS3d 362]—

Peters, P.J. Appeals from a decision and judgment of the Supreme Court (Sherman, J.), entered July 19, 2013 and August 23, 2013 in Tioga County, ordering, among other things, sole legal and primary physical custody of the parties' children to defendant.

Plaintiff (hereinafter the mother) and defendant (hereinafter the father) are the parents of two sons, born in 2002 and 2006. The mother commenced this divorce action in 2009 and, pursuant to a Family Court (Sgueglia, J.) order of the same year, the

parties shared joint legal and physical custody of the children. Following subsequent custody modifications, the parties appeared before Family Court and stipulated to continued joint legal custody with physical custody with the mother. In Supreme Court, the parties consented to a divorce and resolved issues of equitable distribution, but not custody. Following a trial and a *Lincoln* hearing with each child, Supreme Court awarded sole legal and primary physical custody of the children to the father, with visitation to the mother. The mother appeals.[1]

Both the mother and the attorney for the children contend that the testimony of the father's psychiatrist, Kanchan Mahon, concerning the older child's out-of-court statements are inadmissible hearsay. We disagree. A child's out-of-court statements are admissible in a custody dispute if the statements relate to abuse or neglect, provided that such statements are corroborated by other evidence (*see Matter of Bartlett v Jackson*, 47 AD3d 1076, 1077 [2008], *lv denied* 10 NY3d 707 [2008]; *Matter of Rosario WW. v Ellen WW.*, 309 AD2d 984, 987 [2003]). "The degree of corroboration required is relatively low" (*Matter of Kimberly CC. v Gerry CC.*, 86 AD3d 728, 730 [citation omitted]), and the hearing court "is accorded considerable discretion in determining whether there is sufficient corroboration" (*Matter of Bartlett v Jackson*, 47 AD3d at 1077; *see Matter of Bernthon v Mattioli*, 34 AD3d 1165, 1165-1166 [2006]).

Mahon testified that the older child disclosed that, after each time he saw his attorney, the mother and her live-in paramour questioned him at length about what he told the attorney, "until usually he crie[d]." After one visit with his attorney, followed by questioning by the mother, she became so upset that she took away the children's toys. According to Mahon, the child recounted another incident in which the mother "told him not to wake her up for anything . . . after saying that their dog might die in the night of a brain hemorrhage." He was "very frightened" and urinated in his pants while speaking with his father on the phone. Mahon and the father also testified that the mother requested the children's records from Mahon and thereafter confronted the older child about specific conversations that he had with Mahon, such as telling Mahon that he loved the mother 10% and loved the father 110%. The

---

1. In addition to filing a notice of appeal from the judgment of divorce, the mother also appealed from Supreme Court's July 2013 decision. Inasmuch as such decision does not constitute an appealable paper, the appeal therefrom must be dismissed (*see* CPLR 5512 [a]; *Matter of Clary v McIntosh*, 117 AD3d 1285, 1285 n [2014]).

mother confirmed that she asked her son about information contained in Mahon's records. We conclude that Supreme Court did not abuse its discretion in admitting this testimony on the basis that the mother's conduct constituted emotional abuse and that such testimony was sufficiently corroborated (*see Matter of Kimberly CC. v Gerry CC.*, 86 AD3d at 730; *compare Matter of Zukowski v Zukowski*, 106 AD3d 1293, 1294-1295 [2013]).

Turning to the merits, we are unpersuaded by the mother's contention that the father failed to demonstrate a sufficient change in circumstances to warrant modification of the June 2012 custody order. A custody arrangement may be modified where it is established " 'by a preponderance of the evidence that there has been a change in circumstances and that modification is necessary to ensure the best interests of the children' " (*Matter of Cid v DiSanto*, 122 AD3d 1094, 1095 [2014], quoting *Matter of Seacord v Seacord*, 81 AD3d 1101, 1103 [2011] [internal quotation marks and citations omitted]). "[W]here the relationship between joint custodial parents has so deteriorated as to make cooperation for the good of the children impossible, a significant change in circumstances has been demonstrated and modification of the prior custody agreement is warranted" (*Matter of Ferguson v Whible*, 55 AD3d 988, 990 [2008]; *see Matter of Tod ZZ. v Paula ZZ.*, 113 AD3d 1005, 1006 [2014]; *Matter of Deyo v Bagnato*, 107 AD3d 1317, 1318 [2013], *lv denied* 22 NY3d 851 [2013]). Moreover, a custody arrangement consented to by the parties is " 'afforded less weight than one ordered by a court after a full hearing' " (*Nolan v Nolan*, 104 AD3d 1102, 1103 [2013], quoting *Matter of Rosi v Moon*, 84 AD3d 1445, 1446 [2011]).

At trial, the mother testified that the parties cannot talk or agree on anything, citing multiple instances in which the father returned the children late from their visits with him, sometimes keeping them until the following day, without communicating with her. The mother also alleged that, at times, the father picked the children up from school without telling her, leaving her worried and upset when they did not get off the bus. The parties could not even agree on an appropriate medication regimen for the children, who suffer from attention deficit hyperactivity disorder, or which psychiatrist they should treat with. According to the father, the mother has used the authority vested in her by the June 2012 custody order to interfere with his relationship with the children by removing his name from the emergency contact and guardianship lists at the children's school, cutting into his visitation time with the children and disallowing one child to attend the other child's baseball

games so that the father is unable to spend time with the non-participating child. Contrary to the mother's argument that the parties' relationship was equally strained prior to the June 2012 order, we note that such order found a sufficiently functional relationship between the parties to award joint legal custody (*see Matter of Cid v DiSanto*, 122 AD3d at 1095-1096). We thus find the existence of a sufficient change in circumstances warranting a reassessment of the custodial arrangement (*see Matter of Kimberly CC. v Gerry CC.*, 86 AD3d at 731; *Matter of Seacord v Seacord*, 81 AD3d at 1104).

We now turn to Supreme Court's finding that the children's best interests are served by awarding sole legal and primary physical custody to the father. In evaluating the need for a custody modification and determining the children's best interests, we consider "the quality of each party's home environment, each parent's past performance and stability, each parent's fitness and ability to guide and provide for the children's emotional and intellectual development, the length of time the custodial arrangement has been in place, how faithful each party has been to the original order, and the wishes of the children" (*Matter of Seacord v Seacord*, 81 AD3d at 1104; *see Matter of Timothy N. v Gwendolyn N.*, 92 AD3d 1155, 1157 [2012]). Furthermore, while this assessment is based upon the totality of the circumstances after considering each relevant factor, " 'evidence that the custodial parent intentionally interfered with the noncustodial parent's relationship with the children is so inconsistent with the best interests of the children as to, per se, raise a strong probability that the offending party is unfit to act as custodial parent' " (*Matter of Greene v Robarge*, 104 AD3d 1073, 1075 [2013], quoting *Matter of Dobies v Brefka*, 83 AD3d 1148, 1151 [2011] [internal quotation marks, brackets and citations omitted]). Here, in light of the parties' inability to work together for the good of the children, the mother's interference with the children's relationship with their father and the mother's inappropriate questioning and treatment of her older son, Supreme Court's award of sole legal and primary physical custody to the father properly serves the children's best interest (*see Matter of Greene v Robarge*, 104 AD3d at 1077).[2]

Lahtinen, McCarthy and Lynch, JJ., concur. Ordered that the appeal from the decision entered July 19, 2013 is dismissed, without costs. Ordered that the judgment entered August 23, 2013 is affirmed, without costs.

---

**2.** The mother's assertion that Supreme Court improperly limited the testimony at trial to the year-long period following the June 2012 order is unpreserved for our review.