Matter of Suzanne QQ. v Ben RR. (2018 NY Slip Op 03180)





Matter of Suzanne QQ. v Ben RR.


2018 NY Slip Op 03180


Decided on May 3, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 3, 2018

523329

[*1]In the Matter of SUZANNE QQ., Respondent,
v
BEN RR., Appellant. (And Two Other Related Proceedings.)

Calendar Date: March 26, 2018

Before: McCarthy, J.P., Devine, Mulvey, Aarons and Pritzker, JJ.


Daniel Gartenstein, Kingston, for appellant.
Michelle I. Rosien, Philmont, for respondent.
Marcia Heller, Rock Hill, attorney for the child.


McCarthy, J.P.

MEMORANDUM AND ORDER
Appeal from an order of the Family Court of Ulster County (McGinty, J.), entered May 10, 2016, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for sole custody of the parties' child.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of one child (born in 2003). Since early 2011, the parties have been continuously involved in various Family Court proceedings. As relevant here, the mother filed a petition seeking sole custody of the child, the father cross-petitioned for custody and the mother sought an order of protection preventing the father from having any contact
with the child. After a lengthy hearing, Family Court granted the mother sole custody and provided the father contact with the child only during therapeutic visitation. The father appeals.
Family Court properly admitted the child's hearsay statements regarding the father's abuse or neglect. "A child's out-of-court statements are admissible in a Family Ct Act article 6 proceeding when they pertain to abuse or neglect and are sufficiently corroborated" (Matter of Hamilton v Anderson, 143 AD3d 1086, 1087 [2016] [citations omitted]; see Heather B. v Daniel B., 125 AD3d 1157, 1158 [2015]; Matter of Cobane v Cobane, 57 AD3d 1320, 1321 [2008], lv denied 12 NY3d 706 [2009]). "The relatively low degree of required corroboration may be provided by '[a]ny other evidence tending to support the reliability of the [child's] statements'" [*2](Matter of Hamilton v Anderson, 143 AD3d at 1088, quoting Family Ct Act § 1046 [a] [vi]), "and the hearing court is accorded considerable discretion in determining whether there is sufficient corroboration" (Heather B. v Daniel B., 125 AD3d at 1158 [internal quotation marks and citation omitted]; see Matter of Kimberly CC. v Gerry CC., 86 AD3d 728, 730 [2011]).
The father argues that Family Court improperly relied on hearsay statements that were stricken from the record. While the court did sustain objections to the child's statements in some contexts, several individuals testified regarding, and several admitted documents included, the child's statement that the father had told her that the mother was trying to kill her through the psychiatric medication that the mother was administering. Telling a young child with mental health issues that her mother is trying to kill her by administering prescribed medication can harm the child emotionally, such that this conduct could constitute neglect. Though mere repetition of the accusation would not constitute corroboration (see Matter of Cobane v Cobane, 57 AD3d at 1321), Family Court did not err in finding that the child's statements were corroborated here by, among other things, the father's statements to multiple service providers that the medication being administered by the mother was dangerous and harming the child, and by the child's behavior, at the time she began reporting the father's statement, of refusing to take the medication and becoming uncooperative with the psychiatrist who prescribed it (see Matter of Kimberly CC. v Gerry CC., 86 AD3d at 730). Thus, the court properly considered the child's corroborated out-of-court statements.
Family Court did not abuse its discretion in precluding the father's proposed expert. "The admissibility of expert testimony is generally left to the trial court's discretion" (Matter of Angelo AA. [Tashina DD.], 123 AD3d 1247, 1250 [2014] [citations omitted]). Typically, "expert opinions are admissible on subjects involving professional or scientific knowledge or skill not within the range of ordinary training or intelligence" of the trier of fact (Matter of Nicole V., 71 NY2d 112, 120 [1987]; see People v Cronin, 60 NY2d 430, 432-433 [1983]). The father offered a proposed expert on parental alienation or parental alienation syndrome. We discern no error in the court's determination that it could consider whether the mother's actions amounted to parental alienation without expert testimony from an individual who had not met any members of this family, because the court was familiar with the topic of the intended expert testimony and there was ample testimony from multiple witnesses who had interacted with the parties and the child.
On the merits of this initial custody determination, the focus is the best interests of the child (see Matter of Whetsell v Braden, 154 AD3d 1212, 1213 [2017]). "Recognizing Family Court's superior position to assess witness credibility and make findings of fact, this Court will not disturb a decision that is supported by a sound and substantial basis in the record" (Matter of Manell v Manell, 146 AD3d 1107, 1108 [2017] [internal quotation marks and citations omitted]). We acknowledge that the mother's desire to prevent the child from having any contact with the father is disconcerting, as children should generally be encouraged to have a relationship with both parents. Despite the mother's shortcoming in this regard, which she should address and strive to resolve in counseling, the record evidence supports the finding that it would be in the child's best interests for the mother to have sole custody.
Numerous mental health professionals have independently diagnosed the child with the same or similar serious mental health disorders. Although the father clearly loves the child, he does not agree with or accept her mental health diagnoses and believes that she should not be in special education classes or on medication. Some of the medication does have side effects, but the treatment providers have balanced the side effects against the positive results, regularly monitor the child's condition and have changed dosages or medications to address any adverse [*3]effects.
The father continuously complained that he should receive more and unsupervised contact with the child. After being granted weekly therapeutic visits, however, he saw the child only 15 times in 18 months. Although the father's ability to attend therapeutic visits was apparently inhibited by the cost of the treatment provider, the father did not take full advantage of the visits that occurred; instead, he used his limited time with the child to discuss adult or inappropriate topics — including where the child should live, court proceedings, parental alienation and his problems with the mother — rather than engaging in meaningful conversation with the child in an effort to repair their relationship. The father took no responsibility for breaking the rules of supervised visitation. This indicates his inability to distinguish how to appropriately interact with the child, even after being repeatedly warned by visitation supervisors and others. The father's behavior during supervised visits raises concerns over his ability to regulate himself if unsupervised.
Additionally, the father testified that he believes in corporal punishment and admitted that he previously hit the child, starting when she was one year old. The child has repeatedly stated that the father hit her in the past and expressed trepidation over whether he will do so again. Hence, the record provides a basis for concern for the child's physical safety as well as her emotional health if she is alone in the father's care.
Some treatment providers indicated that the father sees the child as a peer and lacks appropriate parent-child boundaries. The father exhibited extremely poor parental judgment in posting on YouTube — accessible to anyone in the world with an Internet connection — videos that he had surreptitiously recorded of his conversations with caseworkers and the child's treatment providers. Those videos contain information that identifies the child and discussions of her weight issues, mental health diagnoses, medications and purported psychotic behaviors. As the hearing progressed, the father continued to make Internet posts containing private medical information about the child, links to those videos and transcripts of the hearing testimony. He explained that he did so to raise awareness of the mistreatment that he had allegedly received in Family Court, corruption in the social services and mental health systems in his county, and impairment of his constitutional rights; he did not acknowledge or appear to recognize that making his child's personal mental health information publicly available could cause her harm or embarrassment and invaded her privacy. According to some treatment providers, the father lacks insight regarding the child's limitations, her feelings, what makes her uncomfortable and how she perceives him.
The latest provider of therapeutic visitations opined that the father had made very little progress during visits and does not generally follow any offered guidance. The provider recommended that therapeutic visitation continue until the child feels safe with the father. Inasmuch as the record contains conflicting evidence regarding the mother's motivations and the parties' interactions with the child, we grant deference to Family Court's credibility determinations. Accepting those determinations, the court's decision to grant the mother sole custody and limit the father's contact with the child to periods of therapeutic visitation is supported by a sound and substantial basis in the record (see Matter of Castagnola v Muller, 105 AD3d 954, 955 [2013]).
Devine, Mulvey, Aarons and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.