Matter of Cory O. v Katie P. (2018 NY Slip Op 04046)





Matter of Cory O. v Katie P.


2018 NY Slip Op 04046


Decided on June 7, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 7, 2018

523652

[*1]In the Matter of CORY O., Respondent,
v
KATIE P., Appellant. (And Five Other Related Proceedings.)

Calendar Date: April 27, 2018

Before: McCarthy, J.P., Egan Jr., Devine, Mulvey and Rumsey, JJ.


William V. O'Leary, Albany, for appellant.
Michelle I. Rosien, Philmont, for respondent.
Alexander W. Bloomstein, Hillsdale, attorney for the children.


Mulvey, J.

MEMORANDUM AND ORDER
Appeal from an order of the Family Court of Greene County (Wilhelm, J.), entered April 14, 2016, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of two daughters (born in 2011 and 2013). In March 2015, the parties stipulated to an award of joint legal custody, with the mother having primary physical custody and the father receiving scheduled parenting
time. Seven days later, the father filed a modification petition seeking sole custody of the children based upon allegations that the mother's paramour, whom she later married (hereinafter the stepfather), had sexually abused the older child. That same day, Family Court awarded the father temporary physical custody and temporarily suspended the mother's visitation. During a subsequent court appearance, Family Court granted the mother supervised visitation, designating the maternal grandfather as supervisor. Following a fact-finding hearing, Family Court granted the father's petition, awarded him sole legal and physical custody of the children and provided supervised visitation to the mother for two hours each week. The mother appeals.
The older child's out-of-court statements concerning the sexual abuse perpetrated upon her by the stepfather did not constitute impermissible hearsay. Where, as here, a child's [*2]out-of-court statements relate to abuse or neglect, such statements are admissible in a Family Ct Act article 6 proceeding so long as they are sufficiently corroborated (see Matter of Hamilton v Anderson, 143 AD3d 1086, 1087 [2016]; Matter of Leighann W. v Thomas X., 141 AD3d 876, 878 [2016]). "The relatively low degree of required corroboration may be provided by '[a]ny other evidence tending to support the reliability of the [child's] statements'" (Matter of Hamilton v Anderson, 143 AD3d at 1087-1088, quoting Family Ct Act § 1046 [a] [vi]; see Matter of Kimberly CC. v Gerry CC., 86 AD3d 728, 730 [2011]). While the mere repetition of an accusation does not, by itself, provide sufficient corroboration (see Matter of Nicole V., 71 NY2d 112, 124 [1987]; Matter of Dylynn V. [Bradley W.], 136 AD3d 1160, 1162 [2016]), "some degree of corroboration can be found in the consistency of the out-of-court repetitions" (Matter of Joshua UU. [Jessica XX.—Eugene LL.], 81 AD3d 1096, 1098 [2011]; see Matter of Kimberly CC. v Gerry CC., 86 AD3d at 730). Proof of the abuse of another child can also provide the requisite corroboration (see Family Ct Act § 1046 [a] [i], [vi]; Matter of Olivia C. [Scott E.], 97 AD3d 910, 912 [2012], lv denied 19 NY3d 814 [2012]). The sufficiency and "reliability of the corroboration, as well as issues of credibility, are matters entrusted to the sound discretion of Family Court and will not be disturbed unless clearly unsupported by the record" (Matter of Justin CC. [Tina CC.], 77 AD3d 1056, 1057 [2010], lv denied 16 NY3d 702 [2011]; see Matter of Leighann W. v Thomas X., 141 AD3d at 878; Heather B. v Daniel B., 125 AD3d 1157, 1158 [2015]).
The maternal aunt testified that, while babysitting the children in February 2015, the older child disclosed that the stepfather comes into her room in the middle of the night and "touches in [her] butt." The child also revealed the sexual abuse to the father, specifically stating that, while she was locked in her room, the stepfather would pull back the covers and reach into her underwear. The maternal aunt described changes in the older child's behavior that coincided with the time frame in which the alleged sexual abuse occurred, explaining that the child, who used to be happy and playful, became "unsociable" and "scared," as if something was bothering her. A therapist whom the older child began seeing following the disclosures testified that the child was "very distant," "detached" and "withdrawn" during their interactions and opined that the child exhibited behavior that was consistent with that of a four-year-old who may have experienced trauma. Further, a woman whose father had previously lived with the stepfather provided detailed and graphic testimony of her own sexual abuse at the hands of the stepfather when she was a young girl. During interviews with the State Police, both this woman as well as her sister confirmed that they had been sexually abused by the stepfather when they were younger. In view of this proof, and according due deference to Family Court's factual findings and credibility assessments, we conclude that the older child's statements were adequately corroborated (see Heather B. v Daniel B., 125 AD3d at 1158; Matter of Lori DD. v Shawn EE., 100 AD3d 1305, 1306-1307 [2012]; Matter of Joshua UU. [Jessica XX.—Eugene LL.], 81 AD3d at 1098-1099).
We further find a sound and substantial basis in the record for Family Court's decision to impose supervised visitation. Initially, while Family Court made no explicit findings as to whether the father demonstrated a change in circumstances, there is ample support in the record for such a determination, including the sufficiently corroborated evidence of the stepfather's sexual abuse of the older child and the undisputed fact that the mother married the stepfather after becoming aware of the allegations against him (see Matter of Kevin F. v Betty E., 154 AD3d 1118, 1121 [2017]). Turning to the best interests analysis, we have repeatedly recognized that "supervised visitation may be appropriate if unsupervised visitation would be detrimental to the child[ren]'s safety because the parent is either unable or unwilling to discharge his or her parental responsibility properly" (id. [internal quotation marks and citations omitted]; see Matter of Adam E. v Heather F., 151 AD3d 1212, 1214-1215 [2017]; Matter of Christine TT. v Gary [*3]VV., 143 AD3d 1085, 1086 [2016]). "The determination of whether visitation should be supervised is a matter left to Family Court's sound discretion and it will not be disturbed as long as there is a sound and substantial basis in the record to support it" (Matter of Vincente X. v Tiana Y., 154 AD3d 1113, 1114 [2017] [internal quotation marks and citations omitted]; see Matter of Raychelle J. v Kendell K., 121 AD3d 1206, 1207 [2014]).
Here, the record is replete with conduct by the mother that raises serious concerns regarding her judgment and demonstrates a marked inability or unwillingness to properly care for and protect the children. Following her separation from the father, the mother moved into the home of a family member, wherein the children were exposed to unsafe living conditions as well as drug abuse. Although admittedly "skeptical" about doing so, the mother then moved herself and the children into the residence of the stepfather, a man 30 years her senior, a mere six weeks after meeting him through an online dating website. She remained in the home with the children despite receiving photographs from the stepfather holding a gun to his head and subsequently married him in the wake of the older child's allegations of sexual abuse, which she continued to deny at trial. Tellingly, it was only after she became the target of ongoing, "every other day" domestic violence at the hands of the stepfather that she chose to end this relationship. During the pendency of the proceedings, the mother began residing with a past boyfriend who had a history of heroin addiction and had yet to complete substance abuse treatment. As a result of this most recent move, the mother voluntarily reduced her visitation with the children due to the distance she would have to travel to exercise such visits. Testimony was also presented regarding the mother's prior drug use, and the father articulated his concerns that the

mother was currently abusing drugs, including during periods of supervised visitation with the children. Further, although not determinative, the attorney for the children argues that supervised visitation is in the children's best interests (see Matter of Hoyt v Davis, 145 AD3d 1353, 1354 [2016]). On this record, we discern no basis upon which to disturb Family Court's decision to restrict the mother's parenting time to two hours of weekly supervised visitation (see Matter of Adam E. v Heather F., 151 AD3d at 1214-1215; Matter of Christine TT. v Gary VV., 143 AD3d at 1085; Matter of Keen v Stephens, 114 AD3d 1029, 1031 [2014]).
Finally, contrary to the mother's contentions, Family Court's order does not compel her to undergo, or condition her right to visitation with the children upon submission to, a drug test or a mental health evaluation (see Matter of Sweet v Passno, 206 AD2d 639, 640 [1994]; see generally Matter of Saggese v Steinmetz, 83 AD3d 1144, 1145 [2011], lv denied 17 NY3d 708 [2011]; Gadomski v Gadomski, 256 AD2d 675, 677 [1998]). Instead, the order merely provides that, should the mother choose to undergo a mental health evaluation and supply the court with proof of a negative hair follicle drug test, such would constitute a change in circumstances for purposes of a subsequent modification petition seeking additional parenting time with the children.
McCarthy, J.P., Egan Jr., Devine and Rumsey, JJ., concur.
ORDERED that the order is affirmed, without costs.