Matter of Mary AA. v Lonnie BB. (2022 NY Slip Op 02851)

Matter of Mary AA. v Lonnie BB.

2022 NY Slip Op 02851

Decided on April 28, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 28, 2022

533529
[*1]In the Matter of Mary AA., Respondent,
v
Lonnie BB., Appellant.

Calendar Date:March 22, 2022

Before:Lynch, J.P., Clark, Reynolds Fitzgerald, Colangelo and McShan, JJ.

Lisa K. Miller, McGraw, for appellant.
Andrea J. Mooney, Ithaca, for respondent.
Citizens Concerned for Children, Inc., Ithaca (Thomas G. Shannon of counsel), attorney for the children.

Reynolds Fitzgerald, J.
Appeal from an order of the Family Court of Tompkins County (Miller, J.), entered December 22, 2020, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' children.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of two children (born in 2008 and 2012). The parties resided together from 2008 until 2014, and from mid-2016 until December 2017, when the father moved out. Thereafter, the children resided with the mother, and the father sporadically engaged in parenting time with the children. In January 2020, the mother filed a petition seeking sole legal and primary physical custody, with scheduled parenting time to the father. The father opposed the petition and requested joint custody and a shared custodial arrangement. Family Court issued a temporary order granting legal and primary physical custody to the mother, and alternate weekend parenting time to the father. Following a fact-finding hearing and a Lincoln hearing, Family Court awarded sole and primary physical custody to the mother, with scheduled parenting time to the father consisting of alternate weekends, a weekday evening and extended alternate weekends during the summer. The father appeals.
Initially, to the extent that the father argues that Family Court refused his general request for discovery, that argument is unpreserved as he failed to object, serve discovery demands upon the mother or move to allow specific discovery (see CPLR 5501 [a] [3]; Matter of Ayesha FF. v Evelyn EE., 160 AD3d 1068, 1071 [2018], appeal dismissed and lv denied, 31 NY3d 1131 [2018]; Matter of James U. v Catalina V., 151 AD3d 1285, 1287 [2017]).
Turning to the merits, in rendering an initial custody determination, Family Court's paramount consideration is the best interests of the children (see Elizabeth B. v Scott B., 189 AD3d 1833, 1834 [2020]; Matter of Samantha GG. v George HH., 177 AD3d 1139, 1140 [2019]). "The best interests analysis involves a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child[ren]'s [lives], each parent's willingness to promote a positive relationship between the child[ren] and the other parent and each parent's past performance, relative fitness and ability to provide for the child[ren]'s intellectual and emotional development and overall well-being" (Matter of Shirreece AA. v Matthew BB., 195 AD3d 1085, 1087 [2021] [internal quotation marks and citations omitted]; see Matter of Christina E. v Clifford F., 200 AD3d 1111, 1112 [2021]). "In light of Family Court's superior position to evaluate witness credibility and make factual findings, the court's determination will not be disturbed if supported by a sound and substantial basis in the record" (Matter of Lorimer v Lorimer, 167 AD3d 1263, 1264 [2018] [citations omitted], appeal dismissed and lv denied 33 NY3d 1040 [2019]; see Matter of [*2]Christina E. v Clifford F., 200 AD3d at 1112).
The evidence at the fact-finding hearing consisted of the testimony of the mother and the father, and receipt of copies of text messages between the parties. The mother described her household as a three-bedroom apartment, with each child having his own bedroom. Family Court heard evidence that the children are very involved in sports and extracurricular activities, and that the mother takes them to all of their practices, games and activities, and has done so throughout their lives. The mother testified that she makes arrangements for the children to attend after-school care, provides transportation, takes the children to all doctor and dentist appointments, is extremely involved in the oldest child's individualized education program, communicates with the school psychologist regarding the oldest child's mental health issues and attends all parent-teacher conferences. The mother further testified that the father's involvement with the children's schooling, sports and extracurricular activities is limited, as he has attended one half of one of the oldest child's football games, transported the youngest child to one soccer practice, never brought the children to or attended the children's medical appointments and has never attended the children's school conferences or events. On one occasion, the father picked up the children from school and thereafter sent a text to the mother advising her, "[n]ever again." Since the start of the pandemic, the mother has reduced and rearranged her work schedule, allowing her to be home to assist the children with their virtual learning days.
The mother relayed her concerns regarding the father's inconsistent parenting time schedule — which occurred prior to the interim court order — as being difficult for the oldest child, who has been diagnosed with ADHD, depression and anxiety. The mother opposed the father being awarded significant or shared parenting time as the children do not have their own rooms at his apartment and she fears that the father would not facilitate the children's participation in sports and other activities, nor would he ensure that the children take their medication. As to joint custody, the mother stated that in the past the father has threatened her, tried to utilize their youngest child to make parenting arrangements, refused to respond to her texts or other forms of communication, and often provides one-word responses to her inquiries.
The father testified that he believes this case is more about the mother's anger and communication issues than concerns for the children. He stated that he has always been involved in the children's lives, although he admits that "[d]octors, stuff like that, I really . . . don't get into." The father stated that he does not consider bringing the children to their sporting events and other activities to be parenting, and that he is involved in other ways, such as financially. The father suggested [*3]that he be given joint legal and physical custody of the children because he is their father, and while he does not dispute that he does not communicate well with the mother, he has the same situation with his other children's mother and yet still partakes in parenting time with them. The father asserts that the children should spend as much time with him as they want.
We find that there is a sound and substantial basis in the record to support Family Court's determination to grant the mother sole legal and primary physical custody of the children. As to legal custody, the father contends that Family Court utilized an incorrect standard in making its determination. We disagree. The court's written order clearly delineates and utilizes the proper standard. Moreover, the record demonstrates that a joint custody arrangement is inappropriate as the mother and the father are unable to communicate in an effective and meaningful manner (see Matter of Nicole V. v Jordan U., 192 AD3d 1355, 1358 [2021]; Matter of Daniel XX. v Heather WW., 180 AD3d 1166, 1168 [2020]; Matter of Samantha GG. v George HH., 177 AD3d at 1140).
As to primary physical custody, although the father clearly loves the children and the children love both parents,[FN1] the record amply demonstrates that the mother has consistently provided a stable environment for the children and is the primary caretaker, providing for the children's day-to-day, educational, medical and emotional needs and overall well-being. Based on the foregoing, and according deference to Family Court's assessment of the evidence presented at the fact-finding hearing as well as the credibility of witnesses, we find that it is in the children's best interests to award primary physical custody to the mother (see Matter of Amanda YY. v Ramon ZZ., 167 AD3d 1260, 1262 [2018]; Matter of Davis v Church, 162 AD3d 1160, 1161 [2018], lvs denied 32 NY3d 905, 906 [2018]; Herrera v Pena-Herrera, 146 AD3d 1034, 1036 [2017]).
As to the parenting time, Family Court is afforded wide discretion in crafting an appropriate parenting schedule. On this record, we discern no basis upon which to disturb the parenting schedule fashioned by Family Court as it is reasonable, in the best interests of the children and is supported by a sound and substantial basis in the record (see Matter of Amanda YY. v Ramon ZZ., 167 AD3d at 1262; Matter of Charles I. v Khadejah I., 149 AD3d 1422, 1424 [2017]).[FN2] The father's remaining contentions, to the extent that they have not been addressed, have been considered and found to be lacking in merit.
Lynch, J.P., Clark, Colangelo and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Family Court ascertained the children's wishes at the Lincoln hearing (see Matter of Heasley v Morse, 144 AD3d 1405, 1408 [2016]; Matter of Battin v Battin, 130 AD3d 1265, 1266 n 2 [2015]).

Footnote 2: Although not determinative, Family Court's determination is consistent with the position of the attorney for the children (see Matter of Michael Q. v Peggy Q., 179 AD3d 1329, 1332 [2020]; Matter of Brandon E. v Kim E., 167 AD3d 1293, 1295 [2018]; Matter of Benjamin v Lemasters, 125 AD3d 1144, 1147 [2015]).