Matter of Samantha E. v Nicholas F. (2024 NY Slip Op 06398)

Matter of Samantha E. v Nicholas F.

2024 NY Slip Op 06398

Decided on December 19, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 19, 2024

CV-23-0935
[*1]In the Matter of Samantha E., Respondent,
v
Nicholas F., Appellant. Attorney for the Child, Appellant. (And Five Other Related Proceedings.)

Calendar Date:November 13, 2024

Before:Aarons, J.P., Pritzker, Ceresia, McShan and Mackey, JJ.

Larisa Obolensky, Bovina Center, for Nicholas F., appellant.
Donna C. Chin, Niverville, attorney for the child, appellant.
Lisa K. Miller, McGraw, for respondent.

Mackey, J.
Appeals from a decision and an order of the Family Court of Cortland County (Julie A. Campbell, J.), entered May 4, 2023 and May 15, 2023, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a child (born in 2012). In April 2017, the parties stipulated to an order of custody and visitation which provided that the parties would share legal custody of the child, with the mother having primary physical placement and the father having certain parenting time during the week and on alternating weekends. Thereafter, several family offense and custody proceedings took place, culminating in a December 2021 order of custody and visitation (hereinafter the prior order) on consent which, as is relevant here, expanded the father's parenting time. The prior order also established that the parent who did not have the child in their care on Tuesday, Thursday and Saturday was allowed one telephone call between the hours of 5:30 p.m. and 6:00 p.m.
Difficulties quickly developed, resulting in a series of subsequent modification and violation/enforcement petitions. Following a multiday fact-finding hearing, which included the testimony of the parties and several other witnesses, and a Lincoln hearing, Family Court issued a decision granting the mother sole legal custody of the child and continuing physical placement with her. Family Court also modified the parenting time provisions of the prior order by eliminating the father's Sunday to Monday biweekly overnight parenting time and one week of his summer vacation parenting time. The court also eliminated the Tuesday and Thursday telephone contact and allowed the mother to monitor the Friday telephone calls. Family Court also found that the father violated the prior order and decided that modification of the prior order was a sufficient remedy for the father's conduct. Family Court subsequently issued an order, which effectuated the terms of that decision. The father and the attorney for the child (hereinafter the AFC) appeal.[FN1]
Initially, the father does not dispute that the marked deterioration in the parties' relationship and their corresponding inability and/or unwillingness to work with one another in a cooperative fashion for the sake of their child constitutes a change in circumstances for purposes of satisfying the mother's initial burden on her modification petition (see Matter of Rockhill v Kunzman, 141 AD3d 783, 784 [3d Dept 2016]). For those same reasons, there also is no question that joint legal custody no longer is feasible (see Matter of Brett J. v Julie K., 209 AD3d 1141, 1143-1144 [3d Dept 2022]; Matter of Zahuranec v Zahuranec, 132 AD3d 1175, 1176 [3d Dept 2015]; Matter of Darrow v Darrow, 106 AD3d 1388, 1390-1391 [3d Dept 2013]). Hence, Family Court was tasked with fashioning a custodial arrangement that would [*2]serve the child's best interests. "Determining the child's best interests requires consideration of, among other factors, the quality of the home environments of each parent, the need for stability in the child's life, the degree to which each parent has complied with the existing custodial arrangement and whether he or she will promote a positive relationship between the child and the other parent, as well as each parent's past performance and ability to provide for the child's physical, emotional and intellectual well-being" (Matter of Ronald R. v Natasha FF., 217 AD3d 1163, 1164 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Mary N. v Scott M., 218 AD3d 890, 892 [3d Dept 2023]). "While a best interests assessment must be based on the totality of the circumstances after considering the relevant factors, evidence that the custodial parent intentionally interfered with the noncustodial parent's relationship with the child is so inconsistent with the best interests of the child as to, per se, raise a strong probability that the offending party is unfit to act as custodial parent" (Matter of Patricia Y. v Justin X., 219 AD3d 1586, 1588 [3d Dept 2023] [internal quotation marks, brackets and citation omitted]; see Heather B. v Daniel B., 125 AD3d 1157, 1160 [3d Dept 2015]). "Given the superior position of Family Court to observe and evaluate the testimony, great deference is accorded to its credibility assessments and factual findings, and [this Court] will not disturb its custody determination so long as it is supported by a sound and substantial basis in the record" (Matter of Whetsell v Braden, 154 AD3d 1212, 1213 [3d Dept 2017] [citations omitted]; accord Matter of Cooper v Williams, 161 AD3d 1235, 1236-1237 [3d Dept 2018]; see Matter of Charles AA. v Annie BB., 157 AD3d 1037, 1039 [3d Dept 2018]).
In determining which parent was the more appropriate custodian, Family Court properly considered the parties' past performance, particularly regarding the ability to recognize and provide for the child's special education needs. The proof reflected that the mother advocated for IEP testing when she noticed the child was struggling in school and has been closely involved in addressing the child's needs in school and at home, ensures that the child attends school, routinely communicates with the child's special education teachers and attends education planning meetings. The father, by contrast, was opposed to the child being tested for learning disabilities because he did not want the child to be "labeled" and admits to not being involved in the child's education. The record is replete with instances where the father failed to bring the child to school after a weekend of parenting time, in violation of the prior order, which caused great strife not only between the parents but also for the child. The record further demonstrates that the father seemingly did not trust the mother to make medical decisions that were in the child's [*3]best interests. For instance, he refused to administer prescription medications to the child during his parenting time.
The record also amply supports Family Court's findings that the father had become unwilling to foster the child's relationship with the mother, the mother's home environment was more stable, and she was more likely to foster the child's relationship with the father. The mother is gainfully employed at a job that provides flexibility for her children [FN2] and she has a three-bedroom home wherein both children have their own rooms. According to the mother, the child has a "super close" relationship with his half sibling. She schedules the child's doctor's appointments, arranges daycare, schooling, camps, etc. The mother also voluntarily took a parenting class in April 2022 to help her learn how to emotionally support the child. Further, her testimony reflected her willingness to foster the child's relationship with the father.
The father, by contrast, is self-employed, but has not recently done any work for pay and at the time of the hearing was financially dependent on his fiancÉe for support and housing. Most troubling to us, however, is the evidence of deliberate steps the father has taken to create animosity between the child and the mother. By the father's own admission, he blames the mother for the issues that have come up. He also promotes the child's disrespectful and inappropriate behavior toward the mother. To be sure, the father has effectively crafted a narrative for the child, villainizing the mother when he tells the child that he is fighting for more parenting time, but that the mother will not allow it, and telling the child that he can do whatever he wants when he is with him. The father also admits that it is difficult for him to impose appropriate consequences if the subject child does something wrong. This behavior by the father and the resulting disrespect and distain that the child has shown to the mother demonstrates that the father's attempts to interfere with the mother-child relationship are successful and not in the best interests of the child (see Matter of Patricia Y. v Justin X., 219 AD3d at 1588; Heather B. v Daniel B., 125 AD3d at 1160). Under all of the circumstances here, and according deference to the credibility determinations of Family Court, we are persuaded that Family Court's determination awarding sole legal custody and primary physical placement to the mother is in the child's best interests (see Matter of Barrett LL. v Melissa MM., 224 AD3d 942, 943-944 [3d Dept 2024], lv denied 42 NY3d 905 [2024]; Matter of Mary AA. v Lonnie BB., 204 AD3d 1355, 1357-1358 [3d Dept 2022]).
The AFC, who otherwise supports Family Court's custodial arrangement, joins the father's argument that the court erred in reducing his parenting time. However, for the reasons stated above, particularly the court's finding that the father "refuses" to foster a relationship between the child and the mother, we decline to [*4]disturb the court's determination in this regard, which continues to provide the father with regular and meaningful access to the child (see Kristen II. v Benjamin JJ., 169 AD3d 1176, 1178 [3d Dept 2019]; Matter of John VV. v Hope WW., 163 AD3d 1088, 1091 [3d Dept 2018]; Matter of LaBaff v Dennis, 160 AD3d 1096, 1098 [3d Dept 2018]; Matter of Coleman v Millington, 140 AD3d 1245, 1247 [3d Dept 2016]). Although the child, through the AFC, expressed that this decision is against the child's wishes for more time with the father, the child's wishes are one factor in Family Court's decision but are not dispositive (see Matter of Michelle L. v Steven M., 227 AD3d 1159, 1163 [3d Dept 2024]; Vickie F. v Joseph G., 195 AD3d 1064, 1069 [3d Dept 2021]) — particularly where, as here, "the evidence received at the hearing supports the . . . finding that the child has been manipulated by one of the parties and the child's views regarding [the child's] relationship with the other party are the product of that manipulation" (Matter of Burola v Meek, 64 AD3d 962, 966 [3d Dept 2009]). Moreover, inasmuch as the record is replete with instances where the father failed to bring the child to school after a weekend of parenting time, modifying the prior order to eliminate the Sunday night overnight visit prevents this issue from reoccurring.
That said, we agree with the father that Family Court should not have eliminated his Tuesday and Thursday telephone contact with the child. Notably, the prior order granted the parties a phone call with the child on days when he was in the other parent's care and nothing in the record indicates that allowing additional telephone calls would be detrimental to the child's well-being (see Matter of Cywiak v Packman, 214 AD3d 654, 657 [2d Dept 2023]). We likewise do not find it necessary that the child's phone contact with the father be supervised.
Turning to the mother's violation petitions, "[a] party seeking a finding of civil contempt based upon the violation of a court order must establish by clear and convincing evidence that the party charged with contempt had actual knowledge of a lawful, clear and unequivocal order, that the charged party disobeyed that order, and that this conduct prejudiced the opposing party's rights" (Matter of John U. v Sara U., 195 AD3d 1280, 1283 [3d Dept 2021] [internal quotation marks and citations omitted]). "This Court will apply deference to Family Court's credibility determinations, and the determination of whether or not to hold a party in contempt will not be disturbed absent an abuse of discretion" (Matter of Kieran XX. [Kayla ZZ.], 154 AD3d 1094, 1096 [3d Dept 2017] [internal quotation marks and citations omitted]). Deferring to Family Court's credibility determinations, we discern no abuse of discretion in its determination that the father knew the conditions set forth in the prior order,[FN3] yet violated that order by failing to take the child to school on January 18, 2022 and failing to take [*5]the child to camp on August 1, 2022 (see Matter of Timothy RR. v Peggy SS., 206 AD3d 1123, 1124 [3d Dept 2022]; Matter of Harley K. v Brittany J., 189 AD3d 1738, 1740 [3d Dept 2020]). The father admitted to those failures. We find no merit to the father's contention on appeal that summer camp does not qualify as an "extracurricular activity." Nor do we find merit in his contention that the imposed sanction — modification of the prior order — was excessive or stemmed from an abuse of Family Court's discretion (see Gerard P. v Paula P., 186 AD3d 934, 937 [3d Dept 2020]). Essentially, Family Court modified the prior order in response to the mother's modification petition and then determined, based on that modification, that no further sanction was warranted based on the father's violation of the prior order.
To the extent that the father argues that Family Court abused its discretion in taking on an advocacy role when it asked questions of certain witnesses, we find that this argument is unpreserved (see Matter of Jerhica K. v Erin J., 223 AD3d 1079, 1083 [3d Dept 2024]; Matter of Borggreen v Borggreen, 13 AD3d 756, 757 [3d Dept 2004]). In any event, "the law will allow a certain degree of judicial intervention in the presentation of evidence" (Matter of Michelle L. v Steven M., 227 AD3d at 1165 [internal quotation marks and citation omitted]). Furthermore, "a trial court may question witnesses or otherwise intervene in the proceedings on its own initiative in order to elicit relevant or important facts, clarify an issue or to facilitate the orderly and expeditious progress of the hearing" (Matter of Denise L. v Michael L., 138 AD3d 1172, 1173-1174 [3d Dept 2016] [internal quotation marks and citation omitted]). Here, the father points to several instances where the court interjected comments and questions into the testimony during the fact-finding hearing. In these instances, the court asked only clarifying questions to determine when or how certain events occurred or to clarify the source of certain pieces of information that were relevant to the modification of custody determination. Given the limited role that the court's intervention had in the fact-finding hearing, we do not find that the court abused its discretion or took on an advocacy role (see id. at 1174; Matter of Carr v Stebbins, 123 AD3d 1164, 1165 [3d Dept 2014]). Finally, the record fails to support, in any respect, the father's contention that Family Court was in some way biased against him.
To the extent not specifically addressed, we have considered the father's remaining contentions and find them to be without merit.
Aarons, J.P., Pritzker, Ceresia and McShan, JJ., concur.
ORDERED that the appeal from the decision is dismissed, without costs.
ORDERED that the order is modified, on the law, without costs, by allowing respondent to initiate an unsupervised telephone call with the subject child on all days that he does not have parenting time; and, as so modified, affirmed.

Footnotes

Footnote 1: The father purports to appeal from both Family Court's written decision and the order entered thereon. As no appeal lies from a decision, the father's appeal from such is dismissed (see CPLR 5512 [a]; Family Ct Act § 1112 [a]; Matter of Steven U. v Alisha V., 209 AD3d 1184, 1184 n 2 [3d Dept 2022]).

Footnote 2: The mother has a child from her second marriage, in addition to the subject child.

Footnote 3: The prior order states that "each party shall honor the subject child's school and extracurricular activities ensuring that he attends all such events, including but not limited to, practices and games."