Matter of Mackenzie OO. v Ian NN. (2025 NY Slip Op 05733)

Matter of Mackenzie OO. v Ian NN.

2025 NY Slip Op 05733

Decided on October 16, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 16, 2025

CV-24-1465
[*1]In the Matter of Mackenzie OO., Respondent,
v
Ian NN., Appellant.

Calendar Date:September 2, 2025

Before:Garry, P.J., Pritzker, McShan, Powers and Mackey, JJ.

Ian NN., Camillus, appellant pro se.
Tsvetelina Gerova-Wilson, Albany, for respondent.
Christine E. Nicolella, Delanson, attorney for the children.

Powers, J.
Appeal from an order of the Family Court of Cortland County (Julie Campbell, J.), entered July 17, 2024, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' children.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a son (born in 2019 [hereinafter the older child]) and a daughter (born in 2020 [hereinafter the younger child]). The mother also has another child from a prior relationship (hereinafter the half sibling). After commencing a relationship and moving in together in 2015, the parties were engaged to be married in 2018. However, the mother called off the engagement soon after she found out she was pregnant with the older child, due to the father's failure to address what she perceived to be alcohol addiction issues. They continued to reside together and maintained an on-again/off-again relationship until the mother moved out of the family home in the summer of 2023.
Following a failure to agree upon what school district the older child would attend, the mother filed an initial petition for custody of the subject children in October 2023. She then filed an amended petition, and the father filed a counterpetition seeking custody. In January 2024, they consented to a temporary order by which they shared joint custody with specified parenting time. Yet, the following month, the mother filed an order to show cause seeking to suspend the father's parenting time upon her discovery of evidence that he had not ceased consuming alcohol as he had previously made her believe and, in fact, had regularly consumed alcohol in excess while the children were in his care. After an emergency hearing, Family Court ordered that the mother and the father continue to share joint legal custody of the children but that the father's scheduled visitation be supervised by designated family members.
Ultimately, following a fact-finding hearing, Family Court awarded sole legal and physical custody of the children to the mother and granted the father supervised visitation at specified times. In a lengthy decision underlying the order on appeal, the court highlighted the severe impact that the father's excessive alcohol consumption had on his ability to care for the children and his inability to adequately address the issue. The court also credited the mother's assertions of domestic violence, spurred on by the father's rampant alcohol abuse, which he perpetrated in front of the children. The court concluded that, although the mother has faced her own struggles, she is able to provide the children with a safe and stable home. The father appeals.
"[I]n rendering an initial custody determination, Family Court's paramount consideration is the best interests of the children" (Matter of Mary AA. v Lonnie BB., 204 AD3d 1355, 1355 [3d Dept 2022]). This "requires an evaluation of various factors, such as each parent's past performance, fitness [*2]and ability to maintain a stable home environment and provide for the child[ren]'s overall well-being, as well as the parents' respective willingness to foster a positive relationship between the child[ren] and the other parent" (Matter of Megan UU. v Phillip UU., 193 AD3d 1287, 1288 [3d Dept 2021]; see Matter of Dusten T. v Trisha U., 235 AD3d 1215, 1216 [3d Dept 2025]). "[T]he best interests of the child are presumed to lie in a healthy relationship with the noncustodial parent" and, thus, supervised visitation may only be ordered if "the party opposing visitation sets forth compelling reasons and substantial evidence that such visitation would be detrimental or harmful to the child[ren]'s welfare" (Matter of Angelica CC. v Ronald DD., 220 AD3d 1064, 1067 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 909 [2024]; see Matter of Christopher WW. v Avonna XX., 202 AD3d 1425, 1426 [3d Dept 2022]). As "Family Court is in a superior position to assess witness credibility and make findings of fact, this Court will not disturb Family Court's decision so long as it is supported by a sound and substantial basis in the record" (Matter of Henry CC. v Antoinette DD., 222 AD3d 1231, 1233 [3d Dept 2023] [internal quotation marks and citation omitted]; see Matter of James EE. v Vanessa EE., 228 AD3d 1025, 1026 [3d Dept 2024]).
The mother testified that she and the father resided together from 2015 until she left the family home in 2023. During this period, as a result of their earlier agreement that she would stay at home with the children and he would provide for the family monetarily, she was completely financially dependent upon the father. This was to such an extent that the mother was not named on any financial accounts, credit cards, the mortgage or the title to the vehicle they shared. She would have to seek his approval for the smallest of purchases — even a cup of coffee. At this same time, the father drank to intoxication nearly every day, which caused turmoil between them. The mother tried to discuss the father's alcohol use with him on numerous occasions, but he was not receptive. Near the end of the relationship, the father would regularly consume alcohol to the point of intoxication, beg her to stay with him and then proceed to tell her that he would "burn [her] to the ground" and "ruin" her if she left. He would threaten her that he could afford better attorneys and that, as a result, he would receive custody of the children and never allow them to see her. The father would apologize the next morning, become angry again later in the day and drink to intoxication, starting the cycle anew. The mother described this to be a cycle that only intensified as she became increasingly financially independent through her self-employment as a photographer.
The verbal abuse escalated and turned physical in December 2022 when, after calling the mother derogatory names in front of the children, he punched a hole in the wall [*3]next to the mother's head. Later that night, he unwrapped the children's Christmas presents and threw them at the mother and then left her to rewrap them on her own. The next night, the mother awoke to a child's screams and found the younger child, who had apparently climbed into the father's bed, stuck under the father's unconscious body screaming for help. The mother was only able to rouse the father by forcefully shaking him, at which point he laughed off the situation and was noticeably slurring his speech. Additionally, the mother noted two incidents when the children needed medical attention, but the father was unable to bring them on his own because he was intoxicated. On one occasion the mother was sick with COVID and on the other occasion she was at work but she had to bring the children for medical attention because the father was unable to drive. Notably, the mother introduced shopping records she had obtained from their once-shared Wegmans rewards account which indicated that the father bought over 4,000 cans and bottles of beer during an approximately six-month period while these proceedings were ongoing. Based upon this discovery, the mother believed the father had not been truthful to her in his reports that he had ceased drinking alcohol.
The mother moved out of the family home and into an apartment in a different town in the summer of 2023. The mother and the father worked to coparent the children, and the father claimed to be addressing his issues with alcohol. Yet, this quickly devolved after a disagreement arose involving the older child's education. Prior to the start of the 2023 school year, the mother enrolled the older child in the school district where she resided — which, according to her, the father consented to. Even so, the father subsequently unilaterally enrolled the child in the school district where he resided, and the child went on to attend that school when the academic year commenced. However, the father did not include the mother's name when completing the paperwork for the older child's enrollment and, as a result, the mother was unable to access any information regarding his education for a period of time in the fall of 2023. The mother then, in December 2023, herself unilaterally re-enrolled the older child in the school district where she had previously resided although she had already moved out of that apartment due to mold issues. At that time, she was residing temporarily with her parents in a different school district but had been granted approval for the half sibling to continue to attend the prior district and the older child to enroll because she planned to purchase a home or, if unable, rent a different apartment in the district.[FN1]
The father's testimony focused upon the tumultuous relationship between him and the mother and the mother's mental health struggles. The father admitted to having previously struggled with alcohol addiction issues but maintained that he no longer did. The father was ordered [*4]to undergo an alcohol addiction screening in the course of this proceeding, during which he was subject to random drug screens and spoke to an addiction counselor who made certain treatment recommendations. Notably, the father acknowledged that he had previously consumed alcohol in front of the children on almost a daily basis and that he purchased alcohol — usually a 6- or 12-pack of beer — at the same frequency. Yet, the father claimed that he did not consume all the beer he purchased. Rather, the father maintained that he cooked with beer regularly and liked to keep the fridge stocked. Nevertheless, upon cross-examination, the father acknowledged consuming six to seven beers almost daily. The father denied being intoxicated on the two occasions when the children needed medical attention, instead asserting that he had been drinking but was able to drive. According to him, he called the mother because he did not want to bring all the children with him to seek medical treatment for one child. The father did admit to punching a hole in the wall when angry at the mother, however, he testified that he did so while throwing garbage into the garbage can and that the mother was not in the room at the time. The father explained that he supported the mother financially during their relationship and after the two separated he continued to assist her, including making certain payments and purchasing items for her and the children upon her move out of the family home. In addition, the father explained that he purchased the camera and equipment the mother used in her photography business, and that, as her business picked up and she became busier, he took over many childcare responsibilities.
The father claims that Family Court did not properly weigh the relevant factors when conducting the best interests analysis and, as such, made a series of legal errors in rendering the underlying custody order. However, his assertions in this respect more accurately take issue with the credibility determinations the court made. Considering the sheer volume of beer purchased by the father on an almost daily basis, it was within the court's discretion to discredit the father's attempted explanation that he did not necessarily drink all the beer he purchased (see generally Matter of James EE. v Vanessa EE., 228 AD3d at 1026; Matter of Henry CC. v Antoinette DD., 222 AD3d at 1233). Similarly, the court was within its discretion to credit the mother's testimony as to several instances where the father's intoxication impaired his ability to care for the children over the father's protestations that this was not the case (see generally Matter of James EE. v Vanessa EE., 228 AD3d at 1026; Matter of Henry CC. v Antoinette DD., 222 AD3d at 1233).
The record demonstrates that the father's alcohol addiction created a continuous cycle of intoxication leading to emotionally charged and verbally abusive outbursts, many of which occurred in front of the children, that only worsened as [*5]the mother worked to gain financial independence. The father's self-serving and unsupported testimony that he has remedied these issues does not negate this demonstrated pattern. Thus, despite the father's argument to the contrary, Family Court properly considered the effect of domestic violence when determining the children's best interests, as these allegations of predominantly verbal and emotional abuse that sometimes led to physical acts of aggression were proven by a preponderance of the evidence (see Matter of Robert C. v Katlyn D., 230 AD3d 1392, 1395 [3d Dept 2024]; compare Matter of Kelly CC. v Zaron BB., 191 AD3d 1101, 1104 [3d Dept 2021]). Accordingly, we are satisfied that the record provides a sound and substantial basis for Family Court's determination that an award of sole legal and primary physical custody to the mother, with supervised visitation to the father, was in the best interests of the children (see Matter of Dusten T. v Trisha U., 235 AD3d at 1217; Matter of Matthew L. v Sierra N., 229 AD3d 866, 869 [3d Dept 2024], lv denied 42 NY3d 907 [2024]; Matter of Angelica CC. v Ronald DD., 220 AD3d at 1069).
The father's remaining contentions, including that the mother engaged in frivolous litigation and was not entitled to assigned counsel, have been reviewed and found to be either unpreserved, previously decided upon and, therefore, barred by the law of the case or lacking in merit.
Garry, P.J., Pritzker, McShan and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The mother conceded that she suffered from depression and anxiety during and following her pregnancies but that she sought treatment and has continued to do so. The mother's mental health counselor testified as to the description of the father provided by the mother during her counseling sessions, as well as the mother's noticeable changes since ending the relationship. According to the counselor, the mother is independent, stronger, confident, thriving as a mother and able to handle her stressors through health, wellness and self-care.